## THE STATE OF IOWA;

IOWA CITY, DECEMBER TERM, A. D. 1855,

In the ninth year of the State.

---

PRESENT:

HON. GEORGE G. WRIGHT, CHIEF JUSTICE.
" NORMAN W. ISBELL, } JUDGES.
" WM. G. WOODWARD, }

---

### CAVENDER v. HEIRS OF SMITH.

So much of the statute of 1839, entitled, "An act subjecting real and personal estate to execution," as relates to the manner of levying and selling property on execution, is directory to, and not inhibitory upon, the officer authorized to sell, so far as the rights of purchasers at such sales are concerned.

These provisions are as much directory, as those which provide for notice to the defendant, for the advertisement and notice of sale, or the return of the writ; and the failure of the officers in any of these particulars, in the absence of fraud, will not vitiate a sale.

Whether the execution defendant had other real estate—whether he had, or had not, personal property—or whether he gave any, and if so, what directions to the officer—are made no part of the duty of the officer to return, under the statute of 1839.

In an action of right, where the plaintiff claims under a sheriff's deed, made under the act of 1839, the deed, if the officer had the power to make the

sale, cannot be assailed by showing, that the defendant in the execution, at the time of the levy, had other real estate and personal estate, or that the property sold was the homestead of the defendant, and that he gave no directions to levy upon the property. If the officer failed to do his duty, the purchaser's title cannot be affected by the omission on the part of the officer; but such questions are, and must be, between the execution defendant, and the officer making the sale.

Gross inadequacy of price, is not, of itself, sufficient to set aside a judicial sale, but it may become an element, quite controlling, in connection with other circumstances.

The execution plaintiff, or his attorney, who become purchasers under their own executions, from their relation to the cause, should be held, in many cases, to greater strictness, and affected by slighter irregularities, than strangers, who purchase at such sales.

Where the officer had power to sell, and no fraud is manifest, and the acts of the officer in levying on property complained of, are out of the record, and exist only *in pais*, those acts cannot be set up by the execution defendant, in an action of right, to assail the deed made by the sheriff under the sale.

## *Appeal from the Des Moines District Court.*

THIS is an action of right, brought by Cavender against Jeremiah Smith, for eighty acres of land in Des Moines county. Pending the action, Smith died, and his heirs were substituted as defendants. Both parties claim title under the said Smith, the defendants as his heirs, and the plaintiff under a judgment against the said Jeremiah, execution thereon, sale and sheriff's deed to James W. Grimes, and a conveyance from Grimes to him. If this sale was valid, then it is conceded that plaintiff should recover; otherwise, not.

The facts connected with that sale, are these: On the 17th of February, 1840, Smith, Bros. & Co. recovered judgment against Jeremiah Smith, in the District Court of Des Moines county. On the 9th of March, 1841, an execution was issued thereon, and on the 15th of May, 1841, the land in controversy was sold on said execution to the plaintiff's grantor, Grimes. The sheriff executed two deeds to Grimes, one of date June 13th, 1841, and the other October 28th, 1843. Grimes conveyed to plaintiff, May 31st, 1844. Cavender was a member of the firm of Smith, Bros. & Co.,

and Grimes was their attorney in prosecuting and collecting this judgment.

To defeat this title, the defendants claimed that Jeremiah Smith, at the time this land was levied upon and sold, was the owner of, and had in his possession, a large amount of personal property, subject to such execution; that he also was the owner in fee simple of other parcels of real estate, not a portion of his homestead; that the land sold was his homestead, or that upon which he was "chiefly situated;" and that Smith did not direct the sheriff to levy upon and sell this tract. The defendants introduced testimony, against plaintiff's objection, tending to show these facts, and also that the land was, at the time of sale, worth much more than the amount for which it sold, or that such price was grossly inadequate. They also claimed, and against plaintiff's objection, introduced testimony to show that this judgment had been paid, and the said land redeemed from said sale. To rebut the proof of payment or redemption, the plaintiff offered the transcript of a record in a certain cause in chancery, wherein Jeremiah Smith was complainant, and Smith, Bros. & Co. were defendants, in which Smith alleged such payment and redemption, as also certain irregularities in the proceedings of the sheriff, in advertising and selling the said land, and seeking to quiet his title thereto, and which transcript or record, showed that it was adjudicated adverse to the complainant.

The instructions as asked by the parties, and given by the court, were substantially as follows: That the paper title shown by plaintiff, was sufficient *prima facie* to entitle him to recover; that the legal presumption was, that the officer did his duty; that he did not find personal property or other real estate; and that the land in controversy was turned out by Smith to the sheriff; but that these presumptions might be rebutted, by showing that no such direction was in fact given; that the sheriff's deed and return on the execution were presumptive evidence that the land was turned out by Smith, but that this presumption might be rebutted by evidence. That if Smith did not give the

sheriff any directions as to what property he should levy upon, then the sheriff had no power or authority to levy upon and sell the messuage, lands or tenements on which Smith was chiefly situate, unless a sufficiency of other property could not be found to satisfy the execution; and that such sheriff had no power or authority to levy upon and sell the real estate, until the personal property was first sold, unless Smith voluntarily authorized a sale of the realty.

To the introduction of this testimony, and the giving of the instructions, proper exceptions were taken by the plaintiff. Verdict for the defendants. Motions for new trial and in arrest of judgment, overruled. Judgment on the verdict. The judgment below was affirmed in this court, at the December term, 1853, by the former judges, but no opinion was ever filed. The case now comes up on a petition for rehearing, with an agreement that the court may decide the case without further argument; and for that reason a statement of the whole case is given. The questions presented and decided, will fully appear from the opinion of the court.

*J. C. Hall* and *Henry W. Starr*, for the appellant.

In presenting the argument, we do not take up the errors as assigned, but propose to present the whole case in the same order and manner as it was presented to the District Court on the trial.

In the first place, we assume as indisputable, that the title presented by the plaintiff was *prima facie* good, and in the absence of any evidence on the part of the defendant, would have required, as a matter of law, a verdict in his favor. Then a question will arise, first upon the construction of the act, subjecting real and personal property to execution, under which this land was sold. The first section of the act subjects real and personal estate of a judgment debtor, of every description, to levy and sale under execution (except necessary wearing apparel). The second section is a direction to the sheriff, or other officer as to what he shall do after the execution is issued; and—

1st. The officer must levy the execution upon such part of the estate as the execution defendant may direct.

2d. When the execution defendant does not direct the sheriff to levy upon specified property—then it is made the duty of the officer to levy upon, and sell the personal estate, before he levies upon real estate.

3d. In the absence or deficiency of personal estate, then the levy must be made upon the real estate of the defendant, upon which the "*defendant is not chiefly situated.*"

4th. If personal estate cannot be found, and real estate upon which the defendant is not chiefly situate cannot be found, then it is the duty of the officer to levy upon the land upon which "the defendant is chiefly situate."

The language of the statute is :

1st. "It shall be the duty of the sheriff, or other officer, to *levy* such execution, upon such part of the estate of such defendant, or defendants, as he, she, or they may direct."

2d. "If no such direction shall be given, the messuages, lands, or tenements on which such defendant, or defendants, may be chiefly situate, shall not be levied upon, unless a sufficiency of other property to satisfy the execution, or executions, in the hands of officers, cannot be found."

3d. "*In all cases*, the real estate of execution defendants shall be exempt from levy and sale, until the personal estate of such defendants shall be levied upon and sold, unless such defendants voluntarily authorize the sale upon the execution of their real estate."

4th. "Provided, that nothing herein contained shall be so construed, as to make it the duty of any sheriff or other officer, to levy upon, and sell on execution, property selected for that purpose by any execution defendant, or defendants, if there exist any reasonable doubt whether such defendant or defendants is, or are, the *bona fide* owners of such property so selected."

By the act of January 16th, 1840, § 6, judgments were made a lien upon the lands, tenements and real estate of the persons of judgment defendants. By the act of January 21st, 1839, § 7, the sheriff is made liable for any willful neg-

lect of his duty, to the prejudice or injury of any person. The execution issued under this law, upon a judgment that was by law, a lien upon *all* of the real estate of the defendant. The execution commanded the sheriff, " to cause to be made of the goods and chattels, lands and tenements of the said Smith, the sum of, &c." The question would seem to be ; what *power* does this writ upon this judgment, confer upon the sheriff? It is not a question of duty—it is one of *power*. Is the power complete and perfect, or is it graduated, so that on execution against a defendant who has no personal property, but has real estate, and an execution against a person who has both personal and real estate, his power would be different? would the two executions thus issued, confer different powers on the sheriff? How is the sheriff, and especially a purchaser, to know, unless it is from the judgment and execution, what his powers are? The legislature certainly never gave these ample remedies against debtors, and left the power to enforce them so obscure, that a purchaser at a sale would be so easily defrauded.

Now let us examine the doctrines of courts, in relation to the immunities of purchasers at sheriff's sale. In *Wheaton* v. *Sexton*, 4 Wheaton, 503, the court say : " The purchaser depends upon the judgment, the levy, and the deed. All other questions are between the parties to the judgment and the marshal. Whether the marshal sells before or after the return, whether he makes a correct return, or any return at all, to the writ, is immaterial to the purchaser, provided the writ was duly issued, and the levy made before the return," and the court express their surprise that any doubt could be entertained upon this point. In *Blane* v. *The Charles Carter*, 4 Cranch, 333, a ship had been sold under an execution issued, within ten days after judgment, contrary to the express prohibition of the 23d section of the judiciary act. The court declared " that if the executions were irregular, the court from which they issued, ought to have been moved to set them aside. They were not void, because the marshal could have justified under them, and if voidable, the proper means of destroying their efficacy had not been pursued." In

*Voorhies* v. *U. S. Bank*, 10 Pet. 477-8, the court says: " The purchaser is not bound to look beyond the decree, when executed by a conveyance." And that " a judgment or *execution*, irreversable by superior court, cannot be declared a nullity by any authority of law." If, after its rendition, it is declared void for any matter which can be assigned for error, only on a writ of error or appeal, then such court, not only usurps the jurisdiction of an appellate court, but collaterally nullifies what such court is prohibited by express law from ever revising."

In *Lessee of Allen* v. *Parrish*, 3 Ham. (O.) 187, the court says : " It is well settled doctrine of the English courts, that any irregularity of the sheriff's proceeding in sales, will not violate the right of the purchaser, provided he had an execution authorizing him to, and he did in fact, levy and sell. The purchaser must look to see if there is a judgment upon which to found an execution ; that an execution has been issued, and a levy made—but is not bound to inquire into the regularity of all the ministerial acts of the sheriff, before or after the sale." Again : " Protection against wrong from the ministerial officer, as well as redress for injuries sustained, is abundantly furnished by law, and it must be from the neglect of the judgment debtor, if his lands are ever sold, without the requisitions of the law being strictly complied with." Again: " The general principle by which the validity of sales upon execution is to be tested, is laid down by the Supreme Court of the United States, in *Wheaton* v. *Sexton*, 4 Wheaton, 503," before cited. Substantially the same doctrine has been recognized in the courts of most of the states, where lands are sold upon execution to satisfy judgments. 2 Bibb, 402; 3 Bibb, 217; 8 Johns. 366; 16 Johns. 537; 2 Binney, 40.

In relation to the sale of lands, when the statute says in positive terms, that " no lands shall be exposed to sale on any writ of execution, till public notice by advertisement shall be given, &c.," in 3 Hammond, 187, the court said : " It has never, I believe, been *supposed* that it was essentially necessary to sustain a title under a sheriff's deed, to show

that the sale of the land was advertised, &c.   This section has ever been considered as directory to the sheriff, and any failure or neglect of him to comply with the directions it contains, might subject him to a penalty or action."   And the court in this case, and in *Voorhies* v. *The Bank*, 10 Pet. 477, lay much stress upon the fact, that the legislature has in no place declared, that the sale shall be void, in case the sheriff fails to perform the express and positive terms used in directing him what to do when he has the writ; and the fact that he is not directed by the statute, to return the acts required of him, and has provided no means to preserve his doings, by which the purchaser can place his title beyond dispute or controversy.   They say, that the statute should not be construed as inhibitory, if there is any doubt as to the intention of the legislature to make it so.   In the case of *Doe* v. *Smith*, 4 Blackford, 230, the court say : " It has been said by this court, that it may be safely presumed by a *bona fide* purchaser at a sheriff's sale, that the sheriff has done his duty in obeying the directions of the statute, as respects the inquest, advertisement, &c.   We think, also, that such purchaser has a right to presume that the sheriff did his duty as to offering the rent and profits for sale," and the court puts the case upon the fact of notice of the purchaser, that the rents were not offered, which the court says would tend to show that the purchaser had combined with the officer to defraud the execution defendant, and that they were not *bona fide* purchases; that the court would defeat the sale at last, only on the ground of fraud in the purchaser.   In *Gonley's Lessee* v. *Ewing*, 3 Howard, (U. S.) 714, the court says : " Had this fact not been established, then we are of opinion the court would have been bound to presume, the sheriff did his duty, and that the sale and deed under it, were valid." The records in this case showed, that the rents were not offered by the sheriff.   Again, the court say : " We admit, if the words of a law are doubtful, the sale should be supported, and the benefit of *any* obscurity in the statute be given to the purchaser, lest he should be misled in cases where a general power is given to the sheriff to sell, and this [general power]

is limited by indefinite restrictions; and that the safer rule is to hold such restrictions to be directory: further than this, no general rule need be asserted," and the court, page 715, admit that the statute of Indiana, of January 30, 1824, § 3, may well be construed as directory to the sheriff.

That act is even more restrictive than the Iowa statute, but is not as definite and specific as the act of 1830, which the court say, cannot be made more positive and explicit, without "using negative language repeating the inhibition; and they say that the act did not give the general power to sell affirmatively, only with the positive restriction imposed in advance of the sale. They also say that the purchaser in that case must be held to notice, and the very nature of the transaction at the sale was, or ought to be, notice.

In *Evans* v. *Parker*, 20 Wendell, 622, on a motion to set aside a sheriff's return of "*nulla bona*," the court say, "as a general rule the sheriff must exercise his discretion, and decide for himself, whether the property on which he has levied can be made available; the course usually taken is an action against the sheriff by the party aggrieved." "Several cases are collected by Mr. Graham, in his Practice, 409, 2 ed., showing that the sheriff has a discretion. It would be a very harsh mode of curtailing that discretion, by setting aside the return." In *Brydges* v. *Walford* 6 Maule & Selw. 42, Lord Ellenborough, C. J., said: "The sheriff acts according to the best information he can procure at the time, and makes his return accordingly." In *Goubat* v. *DeCronny*, 2 Dowl. Pr. Cas. 86, on a motion to set aside a false return, and direct the sheriff to execute the writ, the court refused to interfere, saying, "You must resort to your action. The court will not try on affidavits whether the return made by a sheriff to a writ, is false, even though a strong case is made out, showing fraud and collusion, but the party must resort to his action." In *Thompson* v. *Philips*, Baldwin C. C. 266, it is said, the acknowledgment of the deed is a judicial act, and cures all defects in its process or its execution, which the court have power to remedy by their order. If the court has jurisdiction of the case, the parties, and

power to order the sale by a *venditioni exponas*, a sale so made, and a deed acknowledged, cannot be set aside in a collateral action. An objection to such sale, must show a want of power in the court. Irregularities must be corrected by the court which issues the process."

These authorities show what the law was, when the legislature passed the act of 1839, subjecting real and personal property to execution. The law, as we contend, only directs the officer as to the manner and order of his proceedings; that the sheriff gets his power to levy from the writ itself, and that his power does not depend upon the manner he executes it. The legislature, in the act of 1839, do not pretend to regulate the writ; it only pretends to subject property to the writ, and regulate the duties of the ministerial officer after he has got the writ. They say he shall take the property as directed by the execution defendant; if not directed, he must levy upon personal property; and the land where the defendant is chiefly situated, shall not be levied upon, unless a sufficient amount of other property cannot be found. The act does not say he shall find the other property. It does not say he shall find the personal property, but in the language of C. J. Ellenborough, " he is to act according to the best information he can procure at the time, and make his return accordingly." The law does not even make it his duty to return the fact, that he could not find other property. The levy, and the making of the money, are all he is required to return. The deed which he is required to make to the purchaser, is all the return he is to make. The law does not provide any means to preserve the facts under which he acted, in making the sale. If his power is limited, it certainly is so by indefinite restrictions upon a general power; and then a purchaser would have every presumption before him of the power in the officer, and regularity in his proceedings.

A purchaser goes to the sale, and inquires of the sheriff, "Did Smith direct you to levy on this land?" He is answered in the affirmative. He inquires of the *court;* he is answered, " *the law presumes that he did.*" He asks, " Has

Smith got personal property?"   Again he has a negative answer from the sheriff.   He inquires of the court; the response is, the law presumes that he has none.   He inquires, "Cannot a sufficiency of other property, out of which to make this money, be found?"   The sheriff says no.   The court says the law presumes not; therefore, he purchases.   He has satisfied the requirements of the law, by evidence that all is right, strong enough to hang a man. Then we ask, in the language of the court, in 3 Howard, has not the purchaser been misled by the operation of an indefinite restriction upon a general power?   Can a case be conceived, where a restriction can be more obscure or more doubtful?   Can there be any sanctity to judicial sales, if such a construction can be placed upon the law, that will render the sale void, for want of power in the officer, and that power depend upon the truth or falsity of any one of the propositions which have been proved to him in this manner?   Yet in order to defeat this title, it must be made to depend upon the evidence that can be produced by the judgment debtor, upon these same points.

We claim, that the sheriff made all the return upon the execution that the law required, and that the presumptions of law in favor of the proceeding of the sheriff, are indisputable, as between the present parties.   They are conclusive, and cannot be controverted by parol.   *Small* v. *Hogden*, 1 Litt. 16; 3 Cowen, Notes to Phillipps' Evidence, 1087.   "As between the parties to the process, or their privies, the return is usually conclusive, and not liable to collateral impeachment.   This is a well established general rule; one necessary to secure the rights of parties, and give validity and effect to acts of ministerial officers, leaving the persons injured to their redress by an action of false return." *Bean* v. *Parker*, 17 Mass. 601; 3 Mass. 479; *Whitaker* v. *Sumner*, 7 Pick. 551; 5 Little, 198; 1 Wright, 196; 3 Monroe, 300; 10 Pick. 169; 2 New Hampshire, 79; *Trigg* v. *Lewis, executors*, 3 Litt. 129; *Wilson* v. *Hart, executor*, 1 Pet. C. C. 441; *Bott* v. *Barnell*, 9 Mass. 96; *Stephens* v. *Brown*, 3 Vermont, 420; *Hathaway* v. *Phelps*, 2 Ark. 84.

No defects in the return can be supplied by parol, nor can such return, if fair upon its face, be invalidated, explained or altered against a purchaser, by parol.    *Ladd* v. *Blunt*, 4 Mass. 402; *Williams* v. *Amory*, 14 Mass. 28; *Eastman* v. *Curtis*, 4 Vermont, 616; *Jackson* v. *Steinberry*, 1 Johns. Cas. 155; *Wellington* v. *Gall*, 13 Mass. 483; *Williams* v. *Buket*, 8 Mass. 240; *Davis* v. *Maynard*, 8 Mass. 243.    The return, though not made till long after the day of return, yet, if made and filed before it is offered in evidence, is sufficient evidence in these cases of title.    *Prescott* v. *Pattee*, 3 Pick. 331; *Welch* v. *Gay*, 13 Pick. 376; *U. S.* v. *Slade*, 2 Mason, 71; *Emerson* v. *Towle*, 5 Greenleaf, 197.    Parol evidence not admissible to defeat a title, and the rule applies to sheriffs' sales.    *Tuttle* v. *Jackson*, 6 Wend. 213; *Hawson* v. *Diggert*, 8 Johns. 333.    The purchaser need not look beyond the judgment and levy, and cannot be defeated by parol evidence.    *Jackson* v. *Roberts*, 7 Wend. 83, 88; *Jackson* v. *Cary*, 12 Johns. 427; 5 Barbour, S. C. 568.

We think it cannot be questioned, but the sheriff made return of every fact that the law required him to return.    The statute does not, even by implication, say that the sheriff shall return on an execution, that he could find no goods and chattels; that he could find no other property; he is not required to do more than to return the levy and sale.    Then it would not have strengthened his return, if he had said, that he levied upon the land by direction of Smith, or that he could not find goods and chattels, or other property, for such return would not have been evidence of the fact, and the whole matter, then, as now, would have rested upon the legal presumption that the sheriff did his duty, and nothing more.    A return of an officer of facts, which the law does not require him to return, is mere hearsay, and cannot be used as evidence.    3 Cowen and H.'s notes to Phil. E. 1046; *Bartlet* v. *Gale*, 4 Paige, 503.    And where executed in accordance with the statute, cannot be contradicted by parol, by the parties to the proceedings.    These authorities, we think, sustain our objection to the evidence given to the jury, to prove the want of power in the sheriff to sell.

The next question is the qualification of plaintiff's fourth instruction, and the refusal to rule out Browning and Leffler's evidence, by the court below. The defendant introduced witnesses to prove that he had redeemed the land, to rebut which, the plaintiff produced the record of the chancery suit between these parties, which shows the question of redemption by defendant, was directly tried and adjudicated. The court left it to the jury to say, whether or not this question was made in the suit, and passed upon by the court. Now, we say, that it was the duty of the court to decide the question of the verity of the record; that the record was conclusive, and there was no question for the jury to find—it was absolute verity—and it was evidence equal to the finding of the jury, of all it contained. 3 Cow. & H.'s notes to Phillipps' Evidence, 915–16, and authorities there cited. Surely, a jury was not the proper tribunal to decide whether that record was the record of a chancery suit, or what the issue was that was presented in that record, or what the effect of the decision of the court was. The same evidence had been given in the chancery suit and passed upon by the court. Was not this an appeal from the decision in the chancery suit and a retrial? We think it was.

The next point we present, is the admission by the court below, of the declarations of Smith and Grimes, made long after the sale to plaintiff. These declarations were admitted as evidence to overcome the legal presumption that Smith had directed Cameron, the sheriff, to levy upon this land. The court had decided that the sheriff's levy, sale and deed, *prima facie*, proved the regularity of the sale, that Smith directed the sheriff to levy upon the tract sold, and that the defendant must negative this presumption of law by proof. Could Smith or Grimes' declarations become evidence for this purpose; if not, then the court erred; and surely this question becomes important, when it is considered that this was *all* of the evidence given to the jury, by the defendant, to negative a presumption which, by itself, is strong enough to sustain a title to real property. The declarations given in evidence, were made by Smith, "some time after the sale

of this land by the sheriff," and the same of the declarations of Grimes, who has no interest in the case, and would be a witness for either party. That the admission of this evidence was in conflict with the oldest and best established rules of law, we have no doubt. Grimes was only a trustee, and it does not appear that the declarations were made during the time he held the fee. The admission of a party's declarations in his own favor, if objected to, is fatal on error, though the court below directed the jury to disregard it. *Tuttle* v. *Hunt*, 2 Cow. 436; *Penfield* v. *Carpenter*, 13 Johns. 350; 1 Ashmead, 209. That this evidence was material, and even controlling, will be conceded, when it is remembered that it was the only evidence given, that even by possibility, could tend to prove the negative fact sought to be proved—that Smith did not direct the levy upon the land levied upon and sold by the sheriff. For, if this presumption in favor of the plaintiff's title, had not been rebutted, the plaintiff's title must have been sustained upon the principles in 4 Blackf. 238, and 3 How. 714, and all the cases cited *supra*, and by the decision of the court below. The fact as to Smith having had other personal property would have been immaterial, until this presumption was overcome by negative evidence. So, if there was not evidence to justify the jury in finding this negative fact, the verdict should be set aside as against evidence. If Smith and Grimes had never said to Pierson, that it was another tract of land that was sold on Smith Brothers & Co.'s judgment, then Cavender's title would have been good, but their conversations with Pierson, defeat his title. Surely property in real estate hangs upon a feeble thread, when defeated by such evidence.

The last point which we present, is the overruling of the motion for a new trial. We contend that the verdict was against law and evidence. We say that there was no evidence to disprove the presumption of law, that Smith directed the sheriff to levy upon the land. The bill of exceptions sets out every word of evidence given on the trial, and there is certainly nothing upon this point, unless it is the declarations of Smith and Grimes, as proved by Pierson.

What is this evidence ? (even if it was admissible.)   It is a virtual admission that the sale was valid and acquiesced in by Smith, but he supposed it was another and different tract that had been sold, and not the tract actually sold. Does this prove, or even tend to prove, that Smith did not direct the sheriff upon what tract to levy.   Lands in this country are known and described by their numbers—Smith directs the sheriff to levy on land by number, section, quarter, &c.   Smith may be mistaken in the number or description, in giving his direction.   Can he now fall back upon this mistake, and avoid a sale made under such a levy ? The presumption of law proves the direction of Smith to the sheriff.   Can Smith avoid that presumption by proving a mistake ?   Concede, for the sake of the argument, that Smith and the sheriff were both mistaken, and when the levy was directed by the one and made by the other, they both supposed that it was a different tract of land.   Does the purchaser at the sale lose his title, on account of that mistake ?   Can Smith stand by for a series of years, and then defeat the title collaterally, by proving that he thought it was a different tract of land ?   The evidence rather concedes that the levy was right, and the sale proper.   It does not even tend to prove that the levy which was made, was not by his direction.   Much less does it tend to contradict the fact, that Smith did direct the sheriff on what property to levy.   The case stands thus : Cavender proved a good title to the land, by deeds and record evidence of a judgment, execution, levy, and sale.   Smith proves that long after the sale, he, Smith, said to John Pierson, that a different tract had been sold on this execution, and Grimes says the same thing at some time ; and this evidence is sufficient to defeat an otherwise good title in Cavender, and this because the sheriff had no power to sell.   The want of power in the sheriff is shown by the declarations of Smith, made long after the levy and sale, that he did not own another tract of land, because it had been sold to Grimes on this execution.   Pierson says, " that Smith had from $600, to $1,000 worth of personal property ; that he could not say

Cavender v. Heirs of Smith.

where, or in what condition Smith's property was on the day the execution was levied, or at any other particular time—he merely knew that Smith generally had property." The statute, by the proviso, authorized the sheriff to refuse to take property, if there was a reasonable doubt in regard to the title. Who, but the sheriff, must have that reasonable doubt? some person must doubt, and if the sheriff doubted, he must refuse. In the absence of all evidence as to the facts and circumstances attending Smith's property, can we infer, from the general and indefinite statements of Pierson, that the sheriff violated his duty in not taking the chattels? There is no evidence where the property was—whether he could in fact find it, or that he did not, in the language of C. J. Ellenborough, " act according to the best information he could procure at the time, and make his return accordingly." The statute provided no tribunal by which the question of diligence, or doubts of the sheriff, could be judicially ascertained, or settle the question of Smith's personal property, or its whereabouts.

There is one view to take of this case, which, to our mind, furnishes a clear and indisputable test of the entire merits. Could Cavender sue the sheriff for a false return of this writ, and recover? For if all his proceedings were void, then the return would be clearly false, and the sheriff be subjected to the penalties of the law. We have shown, that inasmuch as the law did not require him to return, that Smith had no goods, or that he directed this land to be levied upon, that the return to that effect would not have been evidence. Submit such a case upon the evidence given in this case, and is it possible that he could recover? The sheriff having a discretion, is only required to exercise it fairly—infallibility is not imposed upon him. His return could not be falsified, by proving that Smith and Grimes had said he had sold another tract of land, or by Pierson swearing that Smith had personal property. They must go farther, and prove that Smith did not direct the levy—that the personal property was in Smith's possession, at the time the levy was made, and the title was in Smith, to the same,

free from reasonable suspicion—and that the sheriff knew that Smith had the property; or that reasonable diligence would have satisfied the sheriff of these facts. His omission must have been willful, in every case, before he could be liable. The defendant, in this case, has introduced only two authorities: *Gantley's Lessee* v. *Ewing*, 3 Howard, 707, and *Jackson ex dem. Clarke* v. *Moore*, 18 Johnson, 442.

The case cited from Johnson, simply decides that in an action brought to recover lands, where the plaintiff claimed title under a sale for taxes, the defendant might prove that the taxes for which the land was sold, had been in fact paid, and that there was no tax due at the time of the sale; and that if they did so prove, the deed was void. The case in 3 Howard, is chiefly relied upon. We think a little care in comparing the statute of Indiana, under which that decision was made, with the statute of Iowa, of 1839, will satisfy the judicial mind, that there is no analogy between the two statutes, by which the construction of the one can become a rule, in the construction of the other. It is true that they both relate to the mode of subjugating real estate to execution. The Indiana statute divides real estate into two parts; first, it carves out of the fee levied upon, a chattel interest—an estate of seven years—and requires the officer to sell the chattel interest, if he can, for a sufficient sum to pay the debt. If it sells for that sum, his power to sell the fee ceases, because the debt is paid; and the statute has made it an express condition, that he shall offer the chattel interest, or term of seven years, before his power can arise to sell the fee. There is no room for the exercise of any discretion on the part of the officer. His levy includes both estates. There is no fact in the case, by which he could be mistaken, or which could deceive a purchaser. There is no presumption of law to aid an omission. The act to be done stands side by side with the statute—a neglect would be nothing less than a refusal to perform his duty. Everything is before the officer and purchaser; the omission to offer the rents, must be willful, and the purchaser must know, or by the slightest diligence can know, of the dere-

liction of the officer.  The purchaser cannot be treated as *bona fide*—he is held to notice.  So it will be seen that the construction given to the Indiana statute, by the Supreme Court of the United States, in 3 How., is not in derogation to the decision in 4 Wheaton, nor does it interfere with a solitary decision we have referred to.

In the Iowa statute, we find a very different condition for the officer and purchaser.  Who but the sheriff and the judgment debtor can know, whether the levy was, or was not, made by the direction of the debtor?  Who but the sheriff can know, whether or not he can or cannot find goods and chattels of the debtor?  Who but the sheriff can say when his power arises to levy upon land, or the land upon which the defendant is chiefly situate?  How can it be presumed, that all these questions were intended by the statute, to be left indefinitely open for future evidence?  Would not this construction make the power of the officer, depend upon the existence or non-existence of a fact, which the law has refused to decide, and denied all means to decide, and must abide the will and pleasure of the judgment debtor before it can be decided.  Surely, in order to preserve the long established principles governing judicial sales, the second section of the statute of Iowa, of 1839, must be construed as directory to the officer.  He must consult the judgment debtor, and receive his directions, and then act upon his own discretion.  He must search for property, and decide for himself, when his search shall cease.  He must inquire for himself, what title the defendant has to property, and must act upon his own judgment.  Everything is confided to his diligence and fidelity.  He cannot neglect to levy upon real estate, because it is rumored that the defendant has personal estate.  When he can decide that it cannot be found, he has done all that the law requires, and his power to levy on real estate is complete.  In addition to all this, this court, in *Hopping* v. *Burnham*, 2 Greene, 39, recognize and reiterate every principle which we contend for in this case.  That decision was made under the statute of 1839, and if it is to be considered as authority, we cannot see how

the present decision can stand—the plaintiff in this case cer-
tainly, has shown an authorized execution and deed.

*M. D. Browning,* for the appellees.

The main point in this case, and the one upon which the
case must turn, is the question of power in the sheriff to
levy and sell. The right and power to sell is dependent
upon, and derives its vitality and validity from, the power
to make a levy; otherwise an officer could sell, and pass
title, as well without as with an execution. The power to
levy is derived not alone from the execution—for the exe-
cution in its form is merely the clerical act of a subordinate
minister of the law. A clerk might insert in an execution
many directions and commands which were not warranted
by law: the execution is the sheriff's commission, his author-
ity to act—it commands him to do what the law authorizes
to be done, but confers no power to do that which the law
forbids to be done; the law speaks through the execution,
and every act done not in accordance with the law, is void,
and of no effect.

It is not from the execution alone, that an officer derives
his power, but in certain cases three things must exist to
give the power: first, he must have an execution; second,
the law must authorize the thing to be done; and in certain
cases, the consent of the defendant must be given. Wher-
ever or whenever the law fixes as a prerequisite to a certain
act of its officer, that the consent of the defendant shall be
obtained or given, then such consent becomes a necessary
ingredient in the power of the officer, and without which
he cannot legally act. For instance, the law exempts from
execution certain specified articles of personal property; if
a sheriff, having an execution, should levy and sell any of
said exempted articles, would the purchaser at such sale (no
matter how innocent), acquire any title or right, as against
the defendant in execution? He clearly would not, as shown
in the case of *Woodward* v. *Murray,* 18 Johns. 401, where
the court says, " without special authority from the defend-
ant in execution, the officer has no power to levy, even with

the consent of the wife of defendant (this was where personal property exempted had been levied and sold), for the reason, that the law had dedicated it for a particular purpose, and says that it shall not be levied on or sold." Yet, would the officer not have power to levy and sell the same property, and pass a title, if said property was voluntarily turned out, or directed to be levied on by the defendant in execution? Certainly in this case the officer would have the power, and the sale would be valid. Here, then, we see that the power is not derived alone from the execution and the law, but from the consent and direction of the defendant.

The law is tender of, and guards well, and with jealous eye, the rights of the citizen; it contemplates and makes it the duty of the officer, to notify a defendant when he has an execution, in order that he may get the directions of defendant on what property to levy. The language of the law is, "It shall be the duty of the sheriff or other officer to levy such execution upon such part of the estate of such defendant, as he, she, or they may direct." This portion of the statute I am willing to concede, is directory to the officer; for if he should abuse his power, disregard the directions, and levy upon other property upon which there was no inhibition by law, he could sell and pass title, even without advertising the same, for the advertising is also directory. But when the law expressly says that certain property *shall not be levied upon or sold*, can that language be said to be only directory to the officer? Does it admit of a construction? Can an officer set up his arbitrary discretion or will against the command of the law? The statute further says: "If no such directions shall be given, the messuage, lands, and tenements on which such defendant or defendants may be chiefly situate, *shall not be levied upon*, unless a sufficiency of other property to satisfy the execution, cannot be found." It further says: "In all cases, the real estate of execution defendants *shall be exempt from levy and sale*, until the personal estate of such defendant shall be levied upon and sold." The law here contemplates something for an officer to do. It requires him to be vigilant in searching for property on

which to levy—it requires him to act with fidelity, and to exercise his reason as a reasonable being, and if there is personal property enough, not exempt, upon which he could levy, or real estate, not dedicated by the law as the homestead, then upon that property he must levy; for it stands as a tower of safety between the rapacity of creditors, or the oppression of officers, and the home of the defendant. He has no power over the homestead, if other property can be found.

Now, had Smith personal property in his possession, out of which the debt might have been paid? Smith had resided from 1835 up to the time of the levy and sale, on the land in controversy. His heirs still resided thereon, within one mile and a half of Burlington, and almost in sight of the place where the sheriff sold the land in dispute. Pierson, as well as several other witnesses, testify (and it was not contended that their testimony was improperly admitted), that from 1836 up to the time the land in controversy was sold under this execution, they knew of no time when Smith had not in his possession, and on his farm, from $600 to $1,000 worth of personal property, consisting of live stock, &c. If, then, this is the case—and it cannot, by any rational mind, be questioned—does the law not, directly and in positive terms, inhibit the officer from levying upon the realty? and if he had no power to levy and sell, could a purchaser derive a title from an act which was void, and which at most was only a usurpation of power? But this is not all the evidence as to other property, and it cannot be plead that the sheriff did not know, or could not find other property, out of which to make the debt. I presume it will not be contended, that the officer had the power to levy and sell the homestead, without directions of the defendant, if there was within his reach, and actually levied upon by him, a sufficiency of other property. Is there any evidence showing other property at the time, and out of which the debt could have been made? The plaintiff's bill of exceptions shows, that defendant offered on the trial, evidence showing that at the time of the levy and sale, Smith had a sufficiency

Cavender v. Heirs of Smith.

·of other real estate (as owner in fee), not occupied by him as a homestead, and out·of which the debt could have been made. But that fact rests not upon the testimony of defend:ant alone. In the evidence offered by plaintiff, we find that the sheriff had actually previously levied upon other real estate (and a sufficiency, is the legal presumption), and out of which the debt could have been made—real estate upon which the judgment was a lien, and which could not be placed beyond the reach of that lien by defendant. The execution under which this land was sold, was issued March .9th, 1841. From the plaintiff's bill of exceptions, we find that on the 26th day of October, 1840, a former execution was issued, and on which execution is the following levy and return, by the sheriff:

"Came to hand October 26, 1840—levied same day .on the west half of the southeast quarter, and the west half of the southwest quarter of section 6, township 69, 2 west; and on the east half of the northwest quarter·of section 7, township 69, 2 west—offered for sale on the 15th day of February, 1841; no bidders.

.·"JAMES CAMERON, Sheriff."

Here, then, we find, from the plaintiff's own evidence, and the sheriff's own act, not only that there was a sufficiency of other property, but that the sheriff had had the legal custody of it, and had offered the same for sale, for plaintiff's benefit; and this, too, only a few days previous to the issuing of the execution under which the land was sold. It cannot, therefore, be said that the officer could not find other property; nor can it be claimed that any one could be an innocent purchaser, much less the plaintiff, who purchased through his attorney, when the former execution had been returned to the office; and it was the duty of every purchaser to examine the records, before purchasing. ·Caveat emptor is a sound moral, as well as a legal maxim, and comes with Christian virtue, when applied.to this case.

This was not an irregularity on the part of the officer in

the discharge of a legal duty—not the wrong doing, or the omission to do what the law authorized to be done—but it was an attempt to do that which the law expressly said he should not do. An omission or irregularity, on the part of the officer, may or may not affect the title of a purchaser—but neither time nor circumstances ever sanctify an illegal act. It was not an act which required the interposition of a court to correct, for it was harmless, as against the defendant, for the want of legal power in the sheriff to do the particular act. The law says the sheriff shall not purchase at his own sales. Is this directory, or prohibitory? Yet it is not stronger than the language in relation to levy and sale, when other property can be found. If a levy should be made under a void execution, and subsequently sold under a *vendi*, the sale would be void, and a purchaser would take no title, for the reason that the officer has no power to sell without a legal levy. See *Boal et al.* v. *King et al.*, 6 Ohio, 11; 1 Ib. 458. Where land was sold by the comptroller, in consequence of a return that the land was chargeable with the tax, through a mistake of the assessor, for the tax had been paid, the court said the comptroller was justified in selling. The tax deed will be considered conclusive evidence that the sale was regular. The statute under which the sale was made, declared that the conveyance should vest an absolute estate, in fee simple, in the purchaser. *Jackson ex dem. J. B. Clarke* v. *Moore*, 18 Johns. 442. In the foregoing case, the court further says: "The title acquired by the purchaser is contingent, so far as it may be effected by establishing the fact that the tax had been paid before the sale was made." So in this case; the title acquired by Grimes was contingent, so far as it may be affected by establishing the fact, that Smith had other property on which the execution could be levied, and the debt made. "The right to sell," say the court, "is founded on the fact of non-payment. The return made to the comptroller is not conclusive of the fact, but only *prima facie*. The validity of the sale and conveyance, is necessarily to depend upon the contingency of non-payment. When this is

drawn in question, it is competent to prove payment; and by so doing, no rule of law is violated." So in the case before the court. The right to levy and sell is founded on the absence of other property, or consent of the defendant. The return made on the execution, by the sheriff, is not conclusive evidence of the facts, but only *prima facie*. The validity of the sheriff's sale and conveyance, is necessarily to depend upon the contingency of there not being other property, or the voluntary turning out of this property by the defendant; and when these facts are drawn in question, it is competent to prove that Smith had other property, and that he did not voluntarily turn out this tract of land; and by so doing, no rule of law is violated. The court in the above case, also say : " We understand this as applying, not only to cases where the officer deviates from the course prescribed by the law, but also where he has acted regularly, according to the facts before him."

Again, in the case of *Steads' Executors* v. *Course*, 4 Cranch, 403, the question was, whether the collector had acted in conformity to the law from which his power was derived ? The court say : " It would be going too far to say that a collector selling land, with or without authority, could, by his conveyance, transfer the title of the rightful proprietor." In this latter case, it was also decided, that it was incumbent on the vendee to prove the authority to sell. In the case of the land sold for tax, decided in 18 Johns. 442, the purchaser, it is presumed, went to the comptroller, and inquired, "Do the taxes remain unpaid on this land ?" He is answered in the affirmative. The returns also showed it to be delinquent. He inquires of the court. He is answered, "the law presumes it to be unpaid"—therefore, he purchases. He has satisfied the requirements of the law by evidence that all is right—*strong enough to hang a man.* Then we say, in the language of the court, in 18 Johnson, that when these facts are drawn in question, it is competent to prove their falsity ; and by so doing, no rule of law is violated.

In the case of *Gantley's Lessee* v. *Ewing*, 3 Howard, 714,

the court say: "This is a question of power; and the answer to the suggestion rests on this: the sheriff's duties are plainly prescribed; if he has no power to sell, want of knowledge on the part of the purchaser could not confer it, and no such contingency can be let in to help his deed." Here the court places the purchaser on the same footing, whether he knew, or did not know, of the existence of other property, or the want of consent on the part of the defendant. If the purchaser knew that Smith had a sufficiency of other property, and also knew that he did not direct the sheriff to levy on this particular tract, but still went on and purchased, would any one contend that he would take the title? Certainly not; for so flagrant an outrage upon the social and legal rights of another, would not be upheld. But when the fact is established, that there was a sufficiency of other property; also, that Smith did not turn it out, then the law presumes that the purchaser knew the existence, or non-existence, of these facts; at least the court say, " no such contingency [want of knowledge on the part of the purchaser] can be let in to help his deed."

The statute of Indiana is not more stringent, in its inhibitory language, than the Iowa statute of 1839. In Indiana, the general power to sell land at auction and outcry is given. So in the laws of Iowa, 1839. As in Indiana, so in Iowa, the restrictions follow the general power to sell. In Indiana the restriction is, that the fee simple shall not be sold, until the rents and profits have been first offered at public outcry. In Indiana, the law authorizes the levy upon the land—the officer has already got exclusive control of the same—but the law restricts his power over the fee, and inhibits him from disturbing it, until a prerequisite of the law has been complied with. He must offer the rents, and, in the absence of bidders, or its bringing sufficient to satisfy the execution, his power to sell the fee then arrives, but not till then. In 3 Howard, as above quoted, the court say: "When did the power [to sell the fee] arise? We think, on the failure of the sheriff to get a bid for the whole amount of the levy for a term of seven years, as before, the

Cavender v. Heirs of Smith.

fee could not be sold." This restriction is not as great as the one in our law. In Indiana, the law authorizes the levy; under our law, the *defendant* authorizes it. The language of our law is: "It shall be the duty of the sheriff, or other officer, to levy such execution upon such part of the estate of such defendant, or defendants, as he, she, or they, may direct; but if no such direction shall be given, the messuage, land, or tenements, on which such defendant, or defendants, may be chiefly situate, *shall not be levied upon,* unless a sufficiency of other property, to satisfy the execution in the hands of the officer, cannot be found." Then follows a still greater restriction, as follows: "And in all cases, the real estate of execution defendants *shall be exempt from levy and sale,* until the personal estate of such defendants shall be first levied upon and sold, unless such defendants voluntarily authorize the sale, upon execution, of their real estate." Here we see that the officer has no power even to levy, much less to sell, except in the absence of personal property, or the voluntary consent of defendant. Then, in the language of the court, in 3 Howard, *when did his power to* [levy and] *sell arise?* Not until the personal property was exhausted, or until the defendant voluntarily authorized the levy and sale of the realty under the execution; until then, the home is exempt; and, as the court say: "Nor can we see how the legislature could have made the exception more explicit, unless negative language had been used, repeating the inhibition; and for this there was no necessity, as the statute conferred a power not known to the common law, and which could only be given affirmatively, and which was not given at all, save with the restrictions." An officer has no power, by implication, to levy and sell; his authority to do so is in the nature of a naked power, conferred by statute. In our law the authority is not given; but in direct and positive language withheld. How can it then be said, that he had the power, or treat it as an irregularity?

I believe that in every authority cited by plaintiff to sustain his position, there is not one analogous to the present—not one where it was a naked question of power in the offi-

cer to do the act—but in every instance it is where the power to act was conceded.. The manner of his procedure was the question before the courts : and in all cases where the power to do a particular act is given, and the mode in which it is done is prescribed by law, then it is directory ; and as a matter of course, no irregularity or neglect of duty can affect a purchaser ; because the law presumes he does what he was authorized to do, and what the oath of his office required he should do. There is also a summary remedy for these irregularities, by a motion in the court from which the execution issued, to .set the proceedings aside. But when the officer, under the law, has no power to do the act, then his act can confer no right on the purchaser ; nor does it affect the title of the defendants, and there is no necessity to set the sale aside—no right can be conferred, no right affected, by an illegal act. Feeling satisfied that the officer had no power to levy and sell under the facts of this case, I will leave this point, with the foregoing suggestions and authorities, for the consideration of the court.

There was no error in the court below, in not ruling out the evidence of Browning and Leffler. That evidence went to the jury without objection from the plaintiff. The plaintiff then introduced their record to the jury, to prove that the same fact testified to by Browning and Leffler, had been finally adjudicated between the same parties. Here, then, was a question of fact to be decided. It might, or might not have been between the same parties—it might, or might not have been the same judgment under which the plaintiff claimed title, or the same facts. These were the facts to be ascertained. It had been submitted by both parties to the jury, and it would have been error in the court to have decided the fact itself. The court instructed the jury, that if they found it to be the same subject matter, and between the same parties, then they were to disregard the evidence of Browning and Leffler. Surely this was all the party could ask the court to do.

As to the declarations of Smith and Grimes, was there

Cavender v. Heirs of Smith.

error in admitting that testimony? We think not: or if it was error, was it not a wrong without an injury? Was there not sufficient evidence, without these statements, to warrant the finding of the jury? and are not the presumptions strong, that the jury found for the defendant from other evidence and other facts? And even though it might have been error to admit these statements, yet, if there was evidence enough without it, to warrant the finding, does it not then become an immaterial error, and for which the court will not reverse? What, then, are we rationally to conclude, was the evidence upon which the jury found? If there was a sufficiency of other property, and not occupied by the defendant, then the strong legal, as well as rational and moral presumption is, that a sane man would not voluntarily authorize the sale of his fireside—the roof that shelters his wife and children, his home—which is sacred to all, and over which the law humanely extends its protection; and have not juries, and is it not their duty, to consider and act upon these presumptions, where the facts of the case warrant it? The presumption that Smith voluntarily turned it out for levy and sale, is a *violent*, naked legal presumption, founded on fiction, and unsupported by any fact whatever— a presumption founded on injustice, and to shelter the corrupt abuse and delinquencies of worthless officers and greedy speculators; and that kind of presumption which must necessarily be overcome and rebutted by presumptions. So, when the presumptions to overcome it are founded on facts, reason, and justice, do they not possess a potency to effectually annihilate that naked, violent, unjust, and unreasonable legal inference, and is it not evident that the jury so viewed it, and made up their verdict accordingly?

What, then, were the facts upon which we are to presume the jury acted, to counterbalance this violent legal presumption? The evidence shows, beyond doubt, first: that there was a sufficiency of personal property; second, that there was a sufficiency of real estate, not occupied by the defendant as a homestead, and out of which the debt might have been made. But, says the plaintiff, the officer had a discre-

tion; he was made the judge to decide whether or not there were doubts as to its being the defendant's property. True, he was not to levy upon property, and sell, where there existed any *reasonable* doubt whether such defendant was the *bona fide* owner of the same. This discretion was to be a reasonable, not an arbitrary one—such a discretion as would govern reasonable men in their ordinary transactions. Could he, then, have had any reasonable doubt of Smith being the *bona fide* owner of the personal property? Continued and uninterrupted possession of personal property, is the best evidence of ownership; and does the evidence not show that Smith had been in the uninterrupted possession for many years—before and up to the time of the levy and sale—of from $600 to $1,000 worth of personal property? Could there have been any reasonable doubt, then, as to who was the *bona fide* owner of the same? But, says the plaintiff, the evidence does not show where said property was, on the day of sale or time of levy. We answer, the evidence does not show that it was anywhere else than in the possession of the defendant. When a fact is once established, the presumption is, that it remains in *statu quo*, until it is proven to be otherwise. But does the evidence not show, that there was a sufficiency of real estate, out of which the debt could have been made? The sheriff's return shows that he had levied upon and offered for sale other real estate. Then is not this act of the officer, the very best evidence that he had no doubt of Smith being the *bona fide* owner of the same? But it may be said by the plaintiff, that the best evidence that Smith was not the owner, is to be deduced from the fact that it was offered for sale, and no one would bid. True, but why did they not bid upon the tract now in controversy? It was offered for sale at the same time and place; and there is as much evidence about the one as the other. Again, the presumption that Smith voluntarily turned out the property to be sold, is rebutted by the fact of the amount levied on the first execution. If any direction was given, it was when the sheriff had the first execution. Now, is it reasonable to suppose, or can it be rationally or legally presumed, that any

defendant would voluntarily turn out two hundred and forty acres of land, worth at the time, as the evidence shows, some fifteen dollars per acre, to pay a debt of some $230 or $240? The land all lay adjoining; and the presumption is, that there would not be much difference in its value. Is not all this, then, sufficient to rebut the presumption of law, that Smith directed this tract, his homestead, to be sold? and is it not sufficient, without the declarations of Smith and Grimes? If so, will this court reverse a case of this importance, where the sacred ties of home, every endearing recollection of the past, every hope of the future, are to be jeopardized, probably forever lost and blasted, in consequence of such reversal, by the death of witnesses, &c.— upon a mere technicality, one holding no affinity with the true merits of the case—does law or justice demand it? We think not.

But was it an error to admit said evidence? We believe not, and shall now endeavor to establish the correctness of that decision. The declaration of Smith, that it was another tract of land sold under the Smith, Brother & Co. execution, was made at a time when there could have been no other motive than to state the truth, as he believed it to exist. It was made not very long after the sale, and in reply to one who wished to purchase the other tract of land—it was cotemporaneous with the sale and perfecting title under it; it was a part of the *res gestœ*. How could the negative of his having voluntarily authorized the land in question to be sold, be proven, except by Smith's own declaration? Who else had the right to speak for him? If when the sheriff was selling, Smith had forbidden the sale, alleging that he had never authorized it, and still the sheriff persisted in selling, could we not have given such declaration in evidence, to rebut the presumption of law, especially when the return upon the execution was silent on the subject? I know of no other mode under heaven, by which it could be proved. This declaration was made accompanying his possession of the land in question. In 1st Greenleaf's Evidence, 134, art. 109, he says: "No reason is perceivable why every decla-

ration accompanying the act of possession, whether in disparagement of the declarant's title, or otherwise qualifying his possession, if made in good faith, should not be received as a part of the *res gestæ*." Can there be any doubt of this declaration of Smith having been made in good faith? and was it not properly admitted to rebut the presumption of his having directed the sheriff to levy and sell the homestead? Were the declarations not concomitant with the principal act of selling, and so connected with it, as to be regarded as the mere result and consequence of the existing motives?

The same as to the declaration of Grimes, who then held the title. The presumption is, that he derived his knowledge, as to what land it was, from the sheriff, which still goes further to rebut the presumption that the home tract was turned out by defendant. It is customary, and I believe universally the case, when men go to purchase at sheriff's sale, to inquire of the officer, where the land lies; and had the sheriff at that time told Grimes that it was the land on which defendant resided, is it likely that Grimes would have stated to Pierson that it was another tract? The statement of Smith and Grimes are to the same effect. But even if Smith's declarations were not admissible, was not Grimes's? and if so, will this court reverse the case—when the result would have been the same if Smith's had been ruled out? (both statements being the same.) The evidence shows that Grimes in this matter was *acting as the attorney for the plaintiffs*—they were represented by him—he was both attorney and agent, and any declarations or admissions made by him would be binding on them, the same as if they had made them themselves. These declarations of Grimes were made at a time, and in connection with the inception of the title, and formed a part of the *res gestæ*. 2 Greenleaf, art. 113, 114. But there is another, and I think a still stronger, and an unanswerable reason, why Grimes's statements were properly admitted. There was a privity of estate, a successive relationship, between Grimes and Cavender. Grimes was Cavender's grantor—they are identified in

interest—and if Grimes, by his admissions, has qualified his rights, then Cavender, as his grantee, succeeds only to those rights as qualified; and the statements are admissible as well against Cavender, as they would have been against Grimes, had he been the plaintiff. See 1 Greenleaf, 241, art. 189; 2 Metcalf, 363. But it is said, why did we not call Grimes as a witness? We answer, because it was not necessary for us to do so. His statements, when proven by a third person, are as good to us as his evidence in court would have been. His statements, as proven, were *prima facie* evidence of the facts, and if the plaintiff wished to rebut it, they could have called him; he would have been a competent witness. Mr. Greenleaf (page 244, art. 191) says: "These admissions by third persons, as they derive their value and legal force from the relation of the party making them, to the property in question, and are taken as part of the *res gestæ*, may be proved by any competent witness who heard them, without calling the party by whom they were made." And these admissions when proven, are considered as original, and not as hearsay evidence. Art. 191, p. 101.

In the evidence offered by defendant, we do not seek to contradict the return of the officer, for there was no return made as to the facts in issue; the plaintiff says it was not necessary for the officer to make any return. Why then seek authority to show, that we cannot dispute that which was never uttered or had an existence? As before remarked, the evidence offered was to rebut a presumption of law, and not to impeach or contradict the return of the sheriff. The case of *Hopping* v. *Burnham*, 2 Greene, 39, is referred to by plaintiff, as authority in this case. The points in this case were neither directly nor indirectly touched in that case; nor were they in the most remote degree referred to, nor, do I suppose, thought of by the court in that case. The power of the officer, throughout, was conceded, but the manner in which he exercised the power, his return, and other irregularities, were the points raised and decided in that case. We do not wish this case to be decided upon a supposed state of facts, and which have not, nor never had,

an existence; but to be decided upon things rational and tangible. The appellant supposes that Smith directed the levy, but through mistake gave the wrong number, and then says, can Smith avoid that presumption by proving a mistake? We say that, in the first place, there were no directions proved; and secondly, that we never attempted to prove a mistake—our effort was to show that we never gave any directions at all.

WRIGHT, C. J.—Several questions are presented for our adjudication. We regard all of them, however, as subordinate to, and dependent upon, a principal one; and without referring in detail to these minor questions, we shall come at once to consider that which must determine finally the title to this property, and settle the rights of the parties thereto.

That question is, did the sheriff have the power to levy upon and sell this land, and did the plaintiff's grantor acquire any title thereby, under the circumstances disclosed in this record? The defendant claims that this land was the homestead of Smith, or that upon which his house or home was chiefly situated; that having, at the time of the levy, other real estate and personal property, the sheriff had no power to levy upon and sell this, without directions from Smith, and that the purchaser could acquire no title thereto. To this plaintiff answers, that granting it to have been his homestead, and that he had personal and other real property, and that Smith gave no direction as to the levy, yet the officer had the power to make such sale; and if he failed to do his duty in the premises, the purchaser's title cannot be thereby affected, but that such questions are, and must be, between the execution defendant and sheriff.

This property was sold under the act of January 25, 1839. So much of said act as relates to this question, is as follows:

"Section 2. That when hereafter any writ of execution may issue against the goods, chattels, lands, tenements, and hereditaments, of any defendant or defendants, it shall be

the duty of the sheriff, or other officer, to levy such execution upon such part of the estate of such defendant or defendants, as he, she, or they may direct; but if no such direction shall be given, the messuage, lands, or tenements on which such defendants may be chiefly situated, shall not be levied upon, unless a sufficiency of other property, to satisfy the execution, or executions, in the hands of the officer, cannot be found; and in all cases, the real estate of execution defendants shall be exempt from levy and sale, until the personal estate of such defendants shall be first levied upon and sold, unless such defendants shall voluntarily authorize the sale upon execution of their real estate; *Provided*, that nothing herein enacted shall be so construed as to make it the duty of any sheriff, or other officer, to levy upon and sell on execution, property selected for that purpose by any defendant or defendants, if there exists any reasonable doubt whether such defendant or defendants is, or are, the *bona fide* owners of such property so selected."

By the act of January 21, 1839, providing for the appointment, and defining the duties of sheriffs, he is made liable on his official bond for any willful neglect of duty. And, by another act, passed at the same session, judgments in the District Court were made liens, from the time of their rendition, upon the lands, tenements, and hereditaments of judgment defendants.

We find no case, in the former adjudications of this court, that can afford much assistance in determining this. In *Humphrey* v. *Beeson*, 1 G. Greene, 199, it was unnecessary, and the court seems to have so regarded, to examine the effect of irregularities and errors on the part of sheriffs, in relation to such sales. It is there held, however, that a sheriff's deed is admissible in evidence, although it contains a variance or a mistake in reciting the execution, and in referring to the decree upon which the land was sold; and that under the statute of 1843, which provided that the sheriff, having an execution, should notify the execution defendant of the time and place of sale, if the sheriff omitted the same, it was not such an irregularity as would justify

the setting aside the sale. In *Hopping* v. *Burnham*, 2 G. Greene, 39, it was decided, that a mere omission or irregularity in a sheriff's return, cannot vitiate a sale made under execution, so as to invalidate the right of a *bona fide* purchaser; and that an imperfect return, or the failure to make any return, cannot prejudice the title of such purchaser. In *Corriell* v. *Doolittle*, 2 Ib. 385, the plaintiff claimed title under a sheriff's deed. The sheriff's return on the execution, failed to show that the execution defendant had been notified of the time and place of the sale, under the statute of 1843, referred to in *Humphrey* v. *Beeson*. In reference to that objection, the court says, "that without such notice, the sale of property belonging to an execution defendant, residing within this state, would be considered at least irregular, and as between original parties to the judgment, would doubtless be deemed sufficient to invalidate the sale. Where, however, the return was merely silent as to the fact of notice, as in that case, it was held, that such silence did not create a legal presumption against any party, that it was not regularly given. And, again, that "the principle asserted in the books, that the validity of a judgment sale, does not depend upon the regularity of the sheriff's return, is fully adopted." In the conclusion of the case, the following dictum is announced: "When the party for whose benefit the execution was issued, becomes the purchaser, he should be held accountable for irregularities which would not afiect a *bona fide* sale to a third party.

These are all the published cases bearing on the case at bar. Others may have been made, but our attention has not been directed to them, and we are not aware of any. None of them are strictly analogous; for here it is conceded that the judgment and execution were regular, and the return of the sheriff, and his deed, are in due form; but it is claimed that the defendants have a right to go back of the levy, sale, return, and deed, and show that the sheriff had no power to sell the land, under the circumstances disclosed. It is true, that part of the reasoning in the case of *Corriell* v. *Doolittle*, would go to the extent of holding the sale invalid,

Cavender v. Heirs of Smith.

if it appeared, *aliunde*, that such notice had not been given to the defendant. But such conclusion is not fairly warranted by the whole tenor of the case, and certainly not by the other cases above quoted, and the authorities therein cited. We find nothing in the decisions of this court, then, to conclude the question. We will then refer to the decisions of other tribunals, to see how far we are assisted in giving construction to this statute.

In New York, it has been held, that a sale under execution to a *bona fide* purchaser, cannot be defeated for error or irregularity in the judgment or execution, or on the ground that no levy was made until after the return day. *Jackson* v. *Roosevelt*, 13 Johns. 97. And to sustain this doctrine, we are referred to *Manning's Case*, 8 Coke, 91, as the leading case. This we have not been able to obtain, and cannot, therefore, speak of it in detail. In *Jackson* v. *Delancy and another*, 13 Johns. 537, it was held, that a *scire facias* to revive a judgment irregularly issued, or an execution issued after a year and a day, without a *scire facias*, is voidable only, and cannot be called in question in a collateral action, so as to defeat the title of a purchaser under the execution. Without citing more in detail from the decisions in New York, it is sufficient to say, that these cases contain the general doctrine on this subject as recognized in that state, as is shown by the following cases: *Woodcock* v. *Bennet*, 1 Cowen, 711; *Ontario Bank* v. *Hallett*, 8 Cow. 192; *Jackson* v. *Bartlett*, 8 Johns. 361; *Jackson* v. *Hasbrouck*, 12 Johns. 213; *Bowen* v. *Bell*, 20 Johns. 338; 3 Caines, 270; *Jackson* v. *Cadwell*, 1 Cow. 623; *Jackson* v. *Sternbergh*, 1 Johns. Cases, 153. In 8 Johns. 361, above cited, it was held that in an action of ejectment against a purchaser of land at a sheriff's sale, the regularity of the execution cannot be questioned. Some of these cases also make a distinction, between those cases where the land was purchased by the plaintiff in the execution, and those in which a third person became the purchaser. But aside from this distinction, the general doctrine in New York is as above stated.

In Massachusetts, a somewhat different doctrine obtains.

In the case of *The Inhabitants of Boston* v. *Tileston*, 11 Mass. 468, where the property was taken and sold on execution in favor of the city of Boston, and the appraisers were inhabitants of that city, it was held that such appraisers were not competent, and the party claiming title under such sale was defeated. In *Eastabrook* v. *Hapgood*, 10 Mass. 313, where the sheriff had, under the statute, returned, that he had caused the demandant's dower to be set off by three disinterested freeholders of the county; and the question arising as to her title thereunder, and it being admitted that one of the appraisers was not a freeholder, as required by law, it was held that the sheriff's return was conclusive, and that if he made a false return, he was liable to the party injured. In *Williams* v. *Amory*, 14 Mass., the extent was holden void, and the title of the purchaser defeated, because the return of the officer on the execution failed to show, that the appraisers were discreet and disinterested freeholders. In *Blanchard* v. *Brooks*, 12 Pick. 47, it was held, that the judgment debtor should be notified to appoint an appraiser, and that unless it substantially appeared that he had such notice, the levy would be void. See, also, on this subject, *Eddy* v. *Knapp*, 2 Mass. 154; *Whitman* v. *Tylor*, 8 Mass. 284; *Litchfield* v. *Cudworth*, 15 Pick. 23; *Chamberlain* v. *Doty*, 18 Pick. 495; *Allen* v. *Thayer*, 17 Mass. 299; *Lawrence* v. *Pond*, Ib. 432; *Leonard* v. *Bryant*, 2 Cushing, 32; *Bradly* v *Bonet*, Ib. 417.

In *Means et al.* v. *Osgood*, 7 Maine, 335, it was held to be essential to the validity of the return of an extent, that it should show that the debtor was duly notified to choose an appraiser. See, also, *Buck* v. *Hardy*, 6 Maine, 163, and notes to both of these cases.

In South Carolina, it has been decided that the sale of lands under execution, would be valid, though no return should be made of the execution, and that the purchaser's title need not be evidenced by a return. *Farne* v. *Hamilton*, 1 Bay, 10; *Evans* v. *Rogers*, 2 Nott & McCord, 563.

In North Carolina, in the case of *McEntire* v. *Durham*, 7 Iredell, 157, the judgment, execution, and deed from the

sheriff, were held sufficient, to support the purchaser's title, without proof of the levy.

In Ohio, it was at one time held, that lands sold upon execution, under a statute requiring an appraisement, must be valued and the appraisers sworn, or the sale was void. *Patrick* v. *Oosterout,* 1 Ohio, 27. This case was, however, afterwards overruled in the case of *Allen* v. *Parrish,* 3 Ohio, 188; and it was there ruled, that if the sale was made to a stranger, the title would not be vitiated, though the land was not valued. In *Statt* v. *McAllister,* 9 Ohio, 19, the doctrine in *Allen* v. *Parrish,* is recognized and sustained, and also in *Ludlow* v. *Johnson,* 3 Ohio, 553.

In Illinois, the same doctrine is recognized. In *Swiggart* v. *Harber,* 4 Scam. 364, it was decided, that irregularities in the sales of lands on execution, can only be corrected by the court from which the process issues; and where such court is not called upon by the defendant in the execution to set aside such proceedings, they cannot be disturbed by any one else in a collateral proceeding; and that while the judgment might have been erroneous, and an execution issued thereon so irregular, that it would have been quashed on motion, yet neither of them can be collaterally inquired into, and declared invalid, at the instance of a stranger, unless they are not only voidable, but void. See, also, *Buckmaster* v. *Carlin,* 3 Scam. 107; *Bybee* v. *Ashby,* 2 Gilman, 151. In this latter case, the distinction is recognized between those cases in which a third person, and those in which the execution plaintiff, becomes the purchaser, which we shall hereafter notice.

These questions have been frequently before the courts of Indiana, and numerous cases will be found discussing the duties and powers of sheriffs in such sales, and the rights of purchasers thereunder. We will refer to some of the more important. At one time, in that state, the statute only authorized the sale of real property on a *venditioni exponas.* Under this statute, a sale was made under a writ of *fieri facias.* Held, in an action of ejectment, that the purchaser took no title. The court says, in substance, that the pur-

chaser, in order to support his title, must show that the sale was authorized by the judgment of a court of competent jurisdiction, and by the kind of an execution which the statute prescribes; and that such a title of a *bona fide* purchaser cannot be impeached for any error in the judgment, nor on account of the execution's issuing out of season; nor for any fault of the sheriff in not pursuing the directions of the statute, as respects the inquest, advertisement of sale, &c. *Armstrong* v. *Jackson*, 1 Blackf. 210.

In *Harrison and others* v. *Rapp*, 2 Blackf. 1, the plaintiff claimed title under a sheriff's sale. The statute provided, that no real property should be sold under execution for less than one-half its real value, to be ascertained by appraisement. The property in controversy was appraised at $4,640; the execution plaintiff, and the plaintiff in the action of ejectment, became the purchaser for $565: held, that the sheriff's sale was void, and his deed conveyed no title to the purchaser. Also, that if the purchaser of real estate at a sheriff's sale be the execution plaintiff, he is considered a purchaser with full notice, and accountable for all irregularities. In another case, the sheriff had offered the land for sale on the day specified in his notices, and the bidder failed to pay the purchase money. He subsequently re-exposed the property for sale, and the plaintiff in the execution became the purchaser. There was no adjournment from the first to the second sale, nor was there any public notice given of the last sale. It also appeared, that the purchaser at the second sale was fully informed of all the facts, and that the sale was made in pursuance of an understanding between such purchaser and the sheriff: held, that the sale was not in accordance with the statute; that the plaintiff was not an innocent *bona fide* purchaser; and that sufficient ingredients of fraud existed, to vitiate the sale. As to the general doctrine, the court uses this language: "It is in general true, that a *bona fide* purchaser of property at sheriff's sale, is not affected by any error or irregularity in the judgment or execution, nor by any irregularity or omission of the sheriff, in advertising and conducting the

sale.   He is protected by the presumption, that the judgment of a competent court of record has been correctly rendered, and that the execution in the hands of the officer has been regularly issued.   He may also fairly presume, that the sheriff, in the discharge of his duty, has acted according to law.   But if he, by colluding with the officer, encourage a departure from duty, to aggrandize himself, he ceases to be innocent.   He becomes *particeps criminis* with the officer, and the law affords him no protection."   · *Givan* v. *Crawford and others*, 5 Blackf. 260.   The cases of *Carpenter* v. *Schoffner*, 2 Carter, 465, and *Vail* v. *Craft*, Ib. 359, also sustain the same position.

The doctrine in *Wolf and others* v. *Heath and another*, 7 Blackf. 154, where it was held that a purchaser at sheriff's sale, who pays his money and receives a deed from the sheriff for the land, cannot be prejudiced, if the sheriff made an imperfect return, or if he make no return at all, is fully recognized in the case of *Humphrey* v. *Beeson*, in our own court.   In *Morss* v. *O'Neal*, 2 Carter, 65, where the statute required an appraisement of the property, it was held, in the absence of such appraisement, that the sale was void, and the purchaser acquired no title.   To the same effect, is the case of *Holman* v. *Collins*, 1 Carter, 24, and in that case this reasoning is adopted.   "There is no more hardship in requiring a purchaser to inform himself of the appraised value of the property, than there is in requiring him to know of the judgment and execution.   The appraisement must be in writing, must be taken by and lodged with the sheriff before the sale, and must be returned with the execution. We do not see why it is not as easy of access as the execution itself, to one desiring to become a purchaser."

In *Law and others* v. *Smith and others*, 4 Ind. 56, it not appearing from the officer's return on the execution under which the plaintiff claimed, that the rents and profits were not offered before the sale of the fee simple, it was held that it would be presumed that they were so offered.   The case of *Tillotson* v. *Gregory and another*, 5 Blackf. 590, perhaps · more nearly resembles the case now before us, than any other

decided by that court. The second section of our statute of 1839, is an exact copy of the statute of Indiana of 1838, 277. Under that statute, a judgment was obtained against Tillotson, in favor of one Cronkhite. On this judgment, and under the same law, an execution was issued, on which the land in controversy was sold to Gregory and another. The return on the execution, showed that Tillotson directed the sheriff to levy on another tract of land than the one in controversy, which he did; that Tillotson, refusing to give any other property in execution, the sheriff levied upon and sold the tract in dispute, but did not sell the tract turned out by Tillotson. In ejectment, it was objected to the title of Gregory and his co-plaintiff, that it was defective, and did not sustain their right thereto, because the tract of land given in execution by Tillotson, was not first sold. It was held, that the statute of 1838 was directory to the sheriff; and that the purchaser's title was not affected by the failure of the sheriff to sell the land surrendered in execution, any more than if he had sold without giving notice.

In Kentucky the highest sanction is given to judicial sales. See *Bank U. S.* v. *Carrol,* 4 B. Mon. 49, where it is held, that where the authority of the officer is exceeded, the sale is void; but not where he fails to strictly follow the authority, or only commits irregularities. *Pepper* v. *Commonwealth,* 5 Monroe, 33; *Patterson* v. *Carneal,* 3 Man. 619; 3 Dana, 621; *Daness* v. *Warnack,* 8 B. Mon. 385; *Read* v. *Hasley,* 9 Dana, 324.

In the federal courts, numerous decisions will also be found bearing upon this question. In *Cooper* v. *Galbraith,* 3 Wash. C. C. 546, where an action of ejectment was brought by the purchaser at a sheriff's sale, against the defendant in execution, or those claiming under him, it was ruled, that the plaintiff need not show any other title than the judgment, execution, and sheriff's deed, and that the defendant could not controvert such title. In *Thompson* v. *Phillips,* Bald. C. C. 266, it is held, that if the court has jurisdiction of the cause, the parties, and the power to order the sale by a *venditioni exponas,* a sale so made, and a deed acknowledged

Cavender v. Heirs of Smith.

in accordance therewith, cannot be set aside in a collateral action.   In the case of the *United States* v. *Slade*, 2 Mason's C. C. 71, however, it was held, under the statute of Massachusetts of 1784, that an extent upon real estate was not good, unless it appear by the return of the officer, that all of the appraisers were sworn, nor unless all the appraisers concur in the appraisement.   The case of *Wheaton* v. *Sexton*, 4 Wheat. 503, is familiar as a leading case, and with reference to it, this court, in the case of *Hopping* v. *Burnham*, uses this strong language: "No court has presumed to question the correctness of this decision.   The highest tribunals have been guided by it, in acting upon all sales made by judicial process."   The language so expressly approved, is this: "The purchaser depends on the judgment, the levy, and the deed.   All other questions are between the parties to the judgment and the marshal.   Whether the marshal sells before or after the return; whether he makes a correct return, or any return all, to the writ, is immaterial to the purchaser."   In 1 Vesey, 195, Lord Hardwick decided, that where a defendant was in custody under a *ca. sa.*, and a *fi. fa.* was afterwards taken out on the same judgment, and a farm levied on and sold, the purchaser, being a stranger, should hold it, as the *fi. fa.*, though irregular and erroneous, was not void.   And in the case of *Taylor* v. *Thompson*, 5 Peters, 369, it is stated, that the authority of this decision, has never been questioned.

In the case of the *United States* v. *Arredondo*, 6 Peters, 729, the following general principles are stated as well settled and of universal application : " Where power or jurisdiction is delegated to any public office or tribunal over a subject matter, and its exercise is confided to his or their discretion, the acts so done are binding and valid as to the subject matter ; and individual rights will not be disturbed collaterally for anything done in the exercise of that discretion, within the power and authority conferred.   The only questions that can arise, between an individual claiming a right under the acts done, and the public, or any person denying its validity, are power in the officer, and fraud in the party.   All other ques-

tions, are settled by the decision made, or the act done by the tribunal or officer; whether executive, legislative, judicial or special, unless an appeal is provided for, or other review, by some appellate or superior tribunal, is provided by law." This doctrine is fully recognized in the well considered case of *Vorhees* v. *The Bank of the United States*, 10 Pet. 449, as the rule governing judicial sales, as far as that learned and high tribunal could do it. This case is familiar to the profession, and we need do nothing more than refer to it, as fully sustaining the position, that the highest sanctity should be given to judicial sales, and protection afforded to those who purchase thereat, so that such property "may become transmissible with security to the possessors." See, also, *Folmie* v. *Thompson*, 2 Pet. 157; *Blaine* v. *The Charles Carter*, 4 Cranch, 328.

We have thus somewhat fully referred to the adjudications of other tribunals. We have felt the more justified in so doing, from the consideration that this question is now, for the first time, presented to us for determination, and the evident importance of the cause, as shown by the record, and the full and able arguments made by counsel representing these parties. Some of the authorities bear perhaps but remotely upon the questions involved—others are more or less analogous, dependent upon the different statutes under which they were made. To have referred to these different statutes, and shown how each case arose, while it would have been satisfactory, would at the same time have unreasonably extended this opinion. The decisions in Massachusetts, however, it is proper to state, were made under a statute different from that of most of the states. There, they follow to some extent, the principles of the common law, which apply to the extent of an *elegit*, or a moiety of the debtor's lands. The creditor, after appraisement by appraisers, becomes the purchaser of the estate for its value, according to such appraisement, or so much thereof, as will equal in value the execution and charges, which is set off and described by metes and bounds. He has something to do in selecting an appraiser, showing the lands, and directing the levy. Under

Cavender v. Heirs of Smith.

such a statute, it is scarcely necessary to say, that a different rule should obtain, than in those cases where no such duties are prescribed, and where all persons can become bidders.

It is also somewhat remarkable, that, upon a question so frequently and in various forms presented for adjudication, so much apparent conflict should be found in the authorities. To attempt to deduce from them, any rule that would be sustained by all of them, as applicable to the case at bar, is perhaps impossible.   We must, therefore, without the aid of any direct authority, apply such general rules, in the construction, as in our opinion, are most just and equitable, most fully sustained by reason and authority, and such as will be most likely to protect the rights of all parties in such controversies.

Such was the policy of the common law, that the freehold could not be sold for debt by any kind of an execution.  The authority in this country, to sell the land, is given by statute. In making such sales, and thus effecting these involuntary transfers, policy and reason require that legal forms should be observed, and the essential provisions of the statute followed, that the rights of parties may be protected, and their property held inviolate from illegal seizure and disposition. On the other hand, however, where the power is given, and there is a failure on the part of the officer to comply with a statute directory in its character, authority, as well as policy and reason, must sustain such titles, in the absence of fraud. For any injury resulting to the defendant, the sheriff is liable on his official bond.  So, also, the defendant has his remedy by direct application to set aside the sale.  And, again, these sales seldom take place, but that the defendant has full opportunity to protect himself from the consequences of his property falling into the hands of purchasers without notice, by attending the sale and declaring his rights. And, indeed, in so many ways may he protect himself, that though we sustain such sales, it by no means follows, that the defendant is left remediless.  We are, also, inclined to give much weight to the suggestion, that there should be some repose and quiet to these titles, as well for the interest

of defendants, as those who purchase. If, by statute, lands may be sold, then encouragement should be given to purchasers to give the full value of what they purchase. To give this encouragement, nothing would have a greater tendency, than to hold such sales valid, notwithstanding trifling irregularities. " In this country, particularly, where property, which within a few years was of but little value, in a wilderness, is now the site of large and flourishing cities, its enjoyment should be at least as secure, as in that country where its value is less progressive."

The statute under which this land was sold, we think, was directory, and not inhibitory, upon the officer. As already shown, this has been expressly so held, with reference to a statute of which ours is a literal copy, by a court of deservedly high authority. *Tillotson* v. *Gregory and another*, 5 Blackf. 590. It appears to us to be as much so, so far as the purchaser's rights are concerned, as those provisions which provide for notice to the defendant, for the advertisement and notice of sale, or the return of the writ; and we do not think, on authority, that the failure of the officer in any of these particulars, in the absence of fraud, would vitiate the sale. And the fact, that the law making power has not declared that the title shall be vitiated, by reason of the failure of the officer to comply with the directions and provisions of the statute, is entitled to much consideration. This, it would be competent for the legislature to do, and the failure to so provide, is a circumstance entitled to much weight in construing the statute. 10 Peters, 449.

Whether the execution defendant had other real estate; whether he had, or had not, personal property; whether he gave any, and, if so, what directions to the officer, are made no part of the duty of the officer to return. These things all exist *in pais*. It would be next to impossible, that any purchaser could ever protect himself beyond a contingency, if he shall be affected in his title, after a lapse of years, by showing that the officer failed to do his duty. 'Suppose the officer should falsely say to the purchaser, that the defendant directed the sale of the land offered, would there

Cavender v. Heirs of Smith.

be either reason or law in saying, that his title should be defeated, by showing that such direction was not given, but that the defendant did, in fact, forbid the levy on the particular tract? We think not. The officer might be liable, and on proper showing, on a direct application, the court from which the execution issued, might set aside the return; but all the authorities recognize different rules, and give more effect to irregularities in such proceedings, than where the question arises, as in this case, in a collateral action.

In the cases in Blackford, and other kindred authorities, it will be found that the sales were held void, because the officer had failed to do some act that was evidenced by writing, or was public, or because of a vital defect in the judgment or writ which conferred the authority. Where the property is to be appraised, as was the case in many of the authorities cited, such appraisement was a matter easily ascertained; and it was upon this idea, it will be recollected, that the case in 1 Carter, 24, was placed, when it is said that there is no more hardship in requiring the purchaser to take notice of the appraisement, than to require him to know of the judgment and execution. And without indorsing the doctrine, that a failure to appraise the property, under a law requiring an appraisement, would defeat the title, yet, to our minds, there is a palpable distinction between such cases and the one at the bar. No purchaser, be he the plaintiff in the execution, his attorney, or a stranger, could have gone to the execution, under the law of 1839, and ascertained the condition of the defendant's property, or what directions he had given with regard to the sale. These things were not as easy of access and ascertainment, as the execution itself, and yet the *appraisement was*, as stated in the case in 1 Carter, 24. And in like manner, do we think, there is a clear distinction between the facts of this case and that of *Gantly's Lessee* v. *Ewing*, 3 Howard, 707, so strongly relied upon by the defendants. We direct attention to the following language in that case: " The statute contemplates a sale of the term; or an offer to sell it, and a failure; and this at public outcry, at the same time and place, and immediately

preceding the sale of the fee. He who goes to purchase, and is present at the sale, and does purchase, rarely if ever, can want actual knowledge, as the open outcry and public auction of the term, is to be as notorious, as that by which the fee is sold; and even should the purchaser of the latter, not be present at the opening of the vendue, the slightest diligence would command information, whether the requisite previous step had been taken. To treat a bidder at the sale, in any of its stages, as an innocent purchaser, we think would be dealing with him in a manner too indulgent; as it is quite certain, in no other instance, could the doctrine of innocent purchasers be applied to one having equal opportunities of knowledge, aside from any duty imposed on him to acquire it. Furthermore, this would in almost every case of the kind, narrow down the issue to a single point, whether the purchaser had or had not notice; leaving the jury to determine on the validity of the title by the exercise of an undefined discretion; its verdict being founded on an exception, *in pais*, and on one the legislature did not see proper to make.

Now, is it not true, that under the rule laid down in this case, by the court below, the jury were left to determine the validity of the plaintiff's title by the exercise of an undefined discretion? that the exception to the sale exists altogether *in pais?* and that upon such an exception, must the verdict have been founded? If so, and we think it is clear, then, according to this authority in 3 Howard, it was the recognition of an exception that the legislature did not see proper to make. And, again, in that case it is held, that "if the words of a law are doubtful, the sale should be supported, and the benefit of an obscurity in the statute, be given to the purchaser, lest he should be misled in cases where a general power is given to the sheriff to sell, and this is limited by indefinite restrictions; and that the safer rule is, to hold such restrictions to be directory." Under the law of 1839, a general power is given to the officer to sell. Whether he sells personal property, the homestead or messuage on which the defendant is "chiefly situated," or

Cavender v. Heirs of Smith.

other real estate, his power is the same.   He derives it from the same character of judgment, and by the same character of writ; and in finding personal property, or other real estate, obeying the directions of the defendant as to his levy, and ascertaining and determining upon the title of the property which may be turned out, his diligence and discretion are not regulated by any rule, nor by any definite restrictions. There is no way in which, under the statute, you can measure his diligence, or say when he has sufficiently searched for other property, or what shall be the evidence of doubt as to the ownership of that turned out by the defendant; and in such cases, "the benefit of the obscurity should be given to the purchaser," and such restrictions held to be directory.

In the case of the sale of rents and profits, however, there is in the performance of the act, nothing left to discretion. There is one definite, tangible, and easily ascertained act to be done.   It is public and notorious, and the mind of the purchaser could not well be left in doubt or without positive knowledge, as to whether it was, or was not, done.

But, again, we think it easy of demonstration, that under the principles laid down by Justice Catron in this very case, this sale would be held good by the Supreme Court of the United States.   He expressly recognizes the general rule, that if the statute of Indiana, under which that sale was made, was merely directory to the officer, then the sheriff's deed could not be assailed.   He also refers to, and recognizes, another rule, that it is their duty to follow the construction given by the Supreme Courts of that and other states to their respective statutes.   Now, the Supreme Court of Indiana, as we have seen, did in the case in 5 Blackf. 590, expressly hold that the section in their statute of 1838 (and of which ours is a literal and exact copy), was directory to the officer.   And therefore, on the authority of this case in 3 Howard, we think the conclusion is inevitable, that that tribunal would hold that this deed could not be assailed, for any failure of the officer to follow the statute. We are also referred by defendants to the case of *Woodward*

v. *Murray*, 18 Johns. 400. · We think the questions there raised and decided, entirely different from those in this case. There an execution issued against Murray, at the suit of Woodward. Murray was in Ohio, and his family being about to remove to his wife's father, the constable, by virtue of the execution, levied upon a cow, as also some other property. It was rumored that Murray had absconded to avoid his creditors. This cow the constable drove off and sold. Woodward was present, when the execution was levied, and afterwards purchased the cow. It was proved that, when the execution was levied, Murray's wife consented to give up the cow, if the constable would release the other property, which was accordingly done. For the cow so sold, this action was brought by Murray. The court held that the law of New York exempting a cow from execution owned by a "householder," was intended for the benefit of poor families, and that though the husband may have left the state, yet if his wife and children were living together, he would still be a householder, the and cow be exempt; and that the wife's consent that the cow might be sold, was not binding, without special authority from the husband. And the court, also, say, "that the evidence rather shows that the consent of the wife, was extorted by the officer." This brief statement of the case, we think, sufficiently shows it to have been decided on a state of facts entirely different from those in the case before us. We are also referred to *Boal et al.* v. *King et al.*, 6 Ohio, 11; *Jackson* v. *Morse*, 18 Johns. 440; *Stead's Executors* v. *Nourse*, 4 Cranch, 403; which were cases involving the validity of sales for taxes, and titles derived thereunder. With regard to all these cases, we think it sufficient to say, that the conditions precedent to be performed by the officers who have anything to do with the testing and valuation of the land, the levying and collection of the taxes, the advertisement and sale of the property, the return, filing or record of the proceedings, are so essentially different, that we cannot recognize them as applicable to this case. Blackwell on Tax Titles, 46, 252 and 253.

Cavender v. Heirs of Smith.

It is also claimed, that the amount bid for the land was so greatly inadequate, that the plaintiff's title must be defeated. The authorities are not entirely uniform upon this subject. Without referring to them in detail, we need only say, that under none of the cases, do we regard the price paid in this case so grossly inadequate, unaccompanied by circumstances of fraud, as to invalidate the title, however the rule might be, if the objection was made on a direct application to set aside the sale. The land was sold for $250. Witnesses value it at from $800 to $1,200. In some of the cases to which we have directed our attention, the land was worth $1,800, and sold for $400; in another, worth $800, and sold for $80; in another, worth $500 or $600, and sold for $25; and in still another, worth $1,200 or $1,500, and sold for $111; and yet the sales were sustained. Without pronouncing positively, we incline to the rule, that gross inadequacy of price is not, of itself, sufficient to set aside a judicial sale, but that this may become an element quite controlling, in connection with other circumstances. 2 Ind. 99 and 442; *White* v. *Damon*, 7 Vesey, jr. 34; *Stockton* v. *Owings*, Litt. S. Cases, 256; *Hart* v. *Bleight*, 3 Monroe, 273; *Gist* v. *Frazier*, 2 Litt. 118. In most of the cases where sales have been held invalid for this reason, even on a direct application, they will be found to have the further element, that the officer sold a large tract, or tracts, without division, when, if he had sold one parcel, or division, or a smaller portion of the tract, his writ might have been satisfied, without sacrificing the entire estate of the debtor. See *Reed* v. *Carter*, 1 Blackf. 410; *Tierman* v. *Wilson*, 6 Johns. C. 411; *Sherry* v. *Nick of the Woods*, 1 Ind. 575.

It is again claimed, that the purchaser acquired no title, because the judgment, under which the land was sold, was paid and satisfied at the time of the sale; or, if not finally paid before, that the land was redeemed before the deed was made by the sheriff. How far the plaintiff's title might be affected, if the judgment was satisfied at the time of the sale, or whether the land was redeemed, it becomes unneces-

sary to examine, however; for we think it conclusively appears, by the record, that these questions had been settled adverse to the defendants, in a direct adjudication between the parties. Such adjudication must be final; both parties must be bound by it.

The fact that the attorney of the execution plaintiff was the purchaser, has not been pressed in the argument. We have, however, given it consideration. It is clear that he, or the execution plaintiff, from their relation to the judgment and execution, should be held, in many cases, to greater strictness, and affected by slighter irregularities, than strangers. In this case, however, we think that the only questions are: power in the officer, and fraud in the party. In most of those cases, where the attorney or plaintiff has been held to a more strict rule, it will be found, that the omission or irregularity of the officer was evident, palpable, and shown by the writ. Here, however, the action of the officer, in levying on the land, was out of the record, and, as already stated, existed only *in pais*. We have shown that the sheriff had the power, and no fraud is manifest. Under such a case, we see no reason to apply a different rule, than if a third person had purchased.

Rehearing granted, judgment reversed, and cause remanded.