## WOOD, BACON & CO. v. YOUNG ET AL.

1. **Practice**: APPEARANCE: JURISDICTION. By filing a motion to dismiss the attachment for a defect in the affidavit, and other reasons which can only be considered after the court has acquired jurisdiction, a prior motion to dismiss the action on account of a defect in the original notice is waived, and general appearance entered for defendant.

2. ———: ———: DISMISSAL OF AN ACTION. Where the record recited that an action was dismissed for a defect in the notice, and that thereupon a motion to dismiss the attachment was overruled with leave to the officer to amend his return, and that the cause was continued to the next term: *Held*, not to amount to a dismissal of the action.

3. **Judicial sale**: MORTGAGE: PURCHASER WITHOUT NOTICE. The purchaser at sheriff's sale under a judgment which was not indexed until after the execution, by the judgment debtor, of a mortgage that was not recorded until after the sale, acquires the title unincumbered by mortgage lien.

4. ———: SALE EN MASSE. An objection to a judicial sale that the land was sold *en masse*, first made eleven years after the sale, will not avail.

5. ———: ADEQUACY OF CONSIDERATION. Where land is shown to be worth $400, and it is sold for $60, subject to a mortgage of $100 and accrued interest, the price is not so inadequate as to justify the court in setting aside the sale.

6. ———: ESTOPPEL. Delay in taking a sheriff's deed will not estop the purchaser from asserting his title under the sale, when no right adverse to his title was acquired after the expiration of twenty days from the time when he was entitled to a deed, and the execution of the sheriff's deed.

7. ———: ———: REVERSAL OF JUDGMENT: BONA FIDE PURCHASER. The provision of Section 1993, Code of 1851, that the title of a *bona fide* purchaser at a sheriff's sale is not affected by a reversal of the judgment, is for the benefit of such purchaser and his grantees, and does not estop him from relying upon a title adverse to that acquired at the sheriff's sale.

## *Appeal from Black Hawk District Court.*

### THURSDAY, MARCH 19.

ON the 12th of November, 1855, Gideon Edinger owned the west half of the southwest quarter of section 31, township 90, range 5, in Blackhawk county, and mortgaged the same to Joseph Pixley, to secure the payment of $100.

Afterward, to-wit: August 12th, 1856, Gideon Edinger, the mortgagor, conveyed said premises to John McLMoil.

August 20th, 1856, John McLMoil conveyed to Ephraim Mears.

October 2d, 1856, Ephraim Mears conveyed to Ona H. Woodward.

July 26th, 1858, Ona H. Woodward conveyed to Isaac Virden.

August 21st, 1858, Isaac Virden conveyed said premises to Thomas C. Parker.

By an instrument dated in the body October 5th, 1858, acknowledged in Bartholomew county, Indiana, October 30th, 1858, filed for record in said Bartholomew county, December 7th, 1858, in Tama county, Iowa, December 22d, 1858, in Blackhawk county, Iowa, February 26th, 1859, and in Butler county, Iowa, March 12th, 1859, Thomas C. Parker mortgaged to the plaintiffs, Wood, Bacon, & Co., of Philadelphia, all the real estate owned by him in the counties of Blackhawk, Butler, Franklin and Tama, in the state of Iowa, and in the counties of Jennings and Bartholomew, in the state of Indiana, the description being general, as above stated.

December 30th, 1859, Thomas C. Parker conveyed the said first described property, subject to plaintiff's mortgage, to E. K. Ware.

October 30th, 1857, Joseph Pixley, the mortgagee of Gideon Edinger, assigned his mortgage to Gideon Wheeler.

On the 13th day of July, 1857, an attachment was duly levied upon the land in question, in a suit of S. R. Brainard against Ona H. Woodward, the then owner of the land, and on the 13th day of March, 1858, a judgment was rendered in said suit in favor of said Brainard, for the sum of $32.75 debt, and $11.75 costs, and on the 6th day of November, 1858, said land was sold at sheriff's sale on said judgment, to Hosford & Miller for the sum of $58.47, and on the 25th day of January, 1867, the sheriff executed to them a deed for said premises under said sale.

At the April term, 1859, of the District Court of Blackhawk county, Gideon Wheeler, the assignee of the mortgage from Edinger to Pixley, brought suit to foreclose the same, making Gideon Edinger, Lena Edinger, John McLMoil, Ephraim Mears, Ona H. Woodward, Isaac Virden, Thomas C. Parker, and Hosford & Miller, defendants; and on April 27th, 1859, a decree was entered foreclosing said mortgage, and ordering a sale of said land.

May 20th, 1859, execution issued on said judgment, and the mortgaged land was sold to E. K. Ware, for the amount of the judgment, and the land not being redeemed, a sheriff's deed was executed to Ware for said premises, February 6th, 1860.

March 27th, 1861, E. K. Ware conveyed said land to A. P. Hosford and Edmund Miller.

December 10th, 1863, Edmund Miller sold the land in controversy to Joseph Young for $457.05, and executed to him a bond for a deed therefor.

January 10th, 1866, A. P. Hosford conveyed an undivided half of said premises to Edmund Miller.

December 26th, 1866, Edmund Miller executed to Joseph Young a warranty deed for said premises, and on the same date Joseph Young mortgaged them to said Miller to secure $472.48, which mortgage is still unsatisfied.

In December, 1863, plaintiffs commenced a suit in the Tama county District Court to foreclose the mortgage given to

them by said Thomas C. Parker, making Thomas C. Parker, Susan Parker, and E. K. Ware, defendants; and on the 16th day of February, 1864, a decree was duly entered for the sale of said lands, except what was situated in Franklin county. Pursuant to this decree execution issued, and in September, 1864, the mortgaged premises situated in Tama county, were sold to B. V. Marsh, one of the plaintiffs, for $400.

Plaintiffs, as junior mortgagees, not made parties to the foreclosure proceeding of Gideon Wheeler against Gideon Edinger, bring this action to redeem the lands in controversy from the lien of said senior mortgage.

The cause was referred to Lewis Lichty, who filed a report recommending that the petition of plaintiffs be dismissed.

The report of the referee was confirmed, and a decree was entered in accordance therewith.

Plaintiffs appeal. The further material facts are stated in the opinion.

*Boies, Allen & Couch,* and *W. H. Curtiss* and *G. R. Struble,* for appellants.

*O. C. Miller* and *Ordway & Husted,* for appellees.

DAY, J.—From the foregoing statement it appears that plaintiffs claim under a mortgage from Thomas C. Parker, who derived title from Isaac Virden, the grantee of Ona H. Woodward.

Woodward acquired his title on the 2d day of October, 1856, and he conveyed to Isaac Virden, on the 26th of July, 1858.

Whilst the land was owned by Woodward, to-wit: July 10th, 1857, an attachment was issued at the suit of S. R. Brainard, and was, on the 13th day of July, 1857, levied on the land in controversy.

On the 13th day of March, 1858, S. R. Brainard recovered judgment against Ona H. Woodward, and on the 28th day of May, 1858, he assigned the same to Edmund Miller. On the 6th day of November, 1858, the land was sold by the sheriff under said judgment, to Hosford and Miller.

When Woodward conveyed to Virden, this judgment existed, and, if valid, was a lien upon the land in question, and Virden, and the subsequent grantees, took title subject thereto. The question principally considered by counsel, is respecting the effect of this judgment and sale.

It is claimed by appellant that the court had no jurisdiction 1. PRACTICE: of the person of defendant; and that the judgment appearance: jurisdiction. is void. It may be conceded that the original notice was defective, and that the service thereof was insufficient.

At the first term of court after the service of notice, C. D. Gray, attorney of Woodward, filed a motion to dismiss the action, because:

1. "The defendant has not been served with notice in said action as provided by law.

2. "The notice served upon defendant does not specify any time when the defendant is required to plead in said action.

3. "Said notice is insufficient to hold the defendant to plead at any time."

At the same term said Gray filed two motions to dismiss the attachment, one of which is founded upon the following grounds:

1. "Said action was not commenced according to law by service of proper original notice.

2. "The affidavit for the attachment was insufficient in law.

3. "Defendant was never asked for any security concerning the note sued on.

4. "Defendant never refused to give such security."

The other motion is upon the following ground: "That the sheriff's return to the writ does not show that the property taken by the writ, was taken as the property of said defendant."

By filing these motions to dismiss the attachment the defendant made a general appearance, and waived the defects in the notice. By these motions the court was called upon to entertain and determine questions, which could be considered only after jurisdiction had attached. A motion which calls into action the powers of a court for any purpose, except to decide upon its own jurisdiction, constitutes a full appearance, *Ulmer*

*v. Hiatt*, 4 G. Greene, 439; *Deshler v. Foster*, Morris, 404; *Chittenden v. Hobbs*, 9 Iowa, 418.

It is urged, however, that the court did dismiss the action, and that no petition was afterward filed. The record of the court's action is as follows:

"Now, to-wit, December 23d, 1857, comes the said defend-ant by Charles D. Gray, his attorney, and argues the motion heretofore filed, to dismiss the action in the above entitled cause, and also comes the plaintiff by W. M. Newton, his attorney to answer thereto. The motion being upon the ground of irregularity of notice, it is sustained by the court. Motion is also produced from the files of this court by the said C. D. Gray, to dismiss the attachment in this cause, which motion is overruled by the court, with leave to the officer to amend his return of writ of attachment; when on motion of the said W. M. Newton, the cause is ordered continued until the next term of this court at the cost of plaintiff, which is accordingly done."

*2. ——: ——: dismissal of an action.*

Whilst this record is a little confused, yet it is apparent from it that the court intended nothing further than merely to determine that the original notice was irregular. And so it seems to have been understood by both court and counsel, for after this motion was sustained the defendant's attorney presented his motion to dismiss the attachment, and plaintiff's attorney made a motion for the continuance of the cause, which was sustained by the court. The cause being thus continued the plaintiff caused to be served another notice upon defendant of the pendency of the action.

On the 1st of March, 1858, the defendant's attorney filed another motion to dismiss the attachment, as follows:

1. "The petition for the attachment is not properly verified.

2. "The only writ of attachment in said cause was issued, and served by the sheriff before the action was properly and legally commenced.

3. "There is no proper attachment bond filed in this action."

By the filing of this motion, the defendant also made a

general appearance to the action, so that the jurisdiction of the court over the person of the defendant is unquestionable.

Next it is insisted that this judgment was not properly indexed when Woodward sold the land to Virden. In the view which we take of the case this question becomes immaterial.

3. JUDICIAL sale : mortgage : purchaser without notice.

The sheriff's sale under this Brainard judgment occurred on the 6th day of November, 1858. There is clearly no evidence that the judgment was not indexed at that time. Plaintiff's mortgage was not recorded in Blackhawk county until long after this sale, to-wit: February 26th, 1859.

If plaintiff's mortgage had even been executed before the judgment, and not recorded before the sale, it would not avail against a purchaser at the sheriff's sale without notice. *A fortiori* can it not avail, being executed after the rendition of the judgment. See *Gower v. Doheney*, 33 Iowa, page 36 and cases cited.

Next it is objected that the sale is invalid because made *en masse*. The tract in dispute is an eighty acres lying in a body. The sale was made in November, 1858. It does not appear that the execution defendant, or those claiming under him were in any manner injured by the mode of sale adopted. This action was not commenced until September 1867, and it was not until April, 1870, more than eleven years after the sale, that this objection was made. It cannot therefore now avail. See *Cunningham v. Felker*, 26 Iowa 117; *Stewart v. Marshall*, 4 G. Greene 75.

4. ——: Sale en masse.

It is further claimed that the price paid was grossly inadequate. The evidence shows that the land was worth from four to five dollars per acre, being from $320 to $400 for the whole tract.

The amount for which it was sold, including sheriff's costs, was about $60. It was subject to the prior lien of the Edinger mortgage, for $100 and accrued interest. The sum realized at the sale was not, therefore, so inadequate as to constitute a ground for setting the sale aside. See *Hill v. Baker*, 32 Iowa 302; *Cavender v. The Heirs of Smith*, 1 Iowa 307; *Wallace v. Berger*, 25 Iowa 456, and cases cited.

5. ——: adequacy of consideration.

It is further urged that Hosford and Miller should be estopped from asserting any claim under the sheriff's sale because of the delay in taking a sheriff's deed. The publicity of the proceedings in a sheriff's sale is constructive notice of the rights of the purchaser for twenty days after the expiration of the time of redemption. Code of 1851, § 1947. If plaintiffs had acquired their interest in the property after the expiration of that period, they might complain of the delay in taking the deed, but, as they did not, they are not injured thereby.

*6. —— : estoppel.*

Hosford & Miller were made parties to the suit instituted fort he foreclosure of the Edinger mortgage, and a decree was entered barring and foreclosing all their right title and interest in the mortgaged premises.

It is claimed that by this decree, whatever interest they acquired under the Brainard judgment was cut off. But upon appeal to the Supreme Court this decree was reversed.

It is claimed, however, that as no supersedeas bond was filed, and the land was sold under execution to John H. Leavitt, who assigned his certificate to E. K. Ware, to whom the sheriff executed a deed, and who afterward sold his interest to Hosford & Miller, Leavitt was a *bona fide* purchaser, and his title was not affected by the reversal. Code of 1851, § 1993. But this provision is forthe benefit of the purchaser at a judicial sale or his grantees. They do not claim the benefit of this provision, but base their title upon the sale under the Brainard judgment.

*7. —— : —— : reversal of judgment: bona fide purchaser.*

Lastly, it is claimed, that Hosford & Miller, at the time of Young's purchase from Miller, relied alone upon the title derived from Ware under the foreclosure of the Edinger mortgage. If this were admitted, that fact would not estop them from subsequently relying upon a title derived from a different source. And that when this suit was commenced, Miller and Young relied upon the title derived under the Brainard judgment, is abundantly established by the fact that they set forth in their answer said judgment and the

proceedings had thereunder, as a reason why plaintiffs should not have the relief asked.

We conclude that the sale under the Brainard judgment, divested whatever interest plaintiffs acquired under the Parker mortgage, and that their petition was rightly dismissed.

AFFIRMED.