## HOWARD v. TRAER ET AL.

CONVEYANCE: DELIVERY OF DEED: EVIDENCE CONSIDERED.

*Appeal from Black Hawk Circuit Court.*

TUESDAY, DECEMBER 11.

ACTION in equity; the nature and object of which was to settle and determine whether the plaintiff or defendants was the owner of certain real estate. There was a trial on written evidence, and counsel concede the cause should be tried *de novo* in this court. The Circuit Court found for the defendants, and a decree in their favor was accordingly entered. The plaintiff appeals.

*Corwin & Galloway*, for appellant

*Miller & Preston*, for appellees.

SEEVERS, J.—Both parties claim title to the premises in controversy through one Ellwood; the plaintiff under a deed, and the defendants by virtue of a certain attachment. The property was attached as the property of Ellwood, at 10 o'clock A. M. of the 22d day of September, 1874, in an action pending in Black Hawk county, where the premises are situate. A judgment was rendered against Ellwood in said action, an execution issued thereon, and there was a sale of the premises to the defendants. Such is their title, and it dates from the time the property was attached. *Hill v. Baker*, 32 Iowa, 302.

It is claimed the deed from Ellwood to plaintiff was delivered on the 21st day of September, 1874, or if this be not true the transaction had assumed such shape as to vest in plaintiff on that day the equitable title. We are unable to concur in either of these propositions. It is true the plaintiff testifies the deed was delivered on the 21st, quite positively; in fact, he is as positive about this as anything else he testifies to; but the testimony of every other witness who pretends to know anything about the delivery contradicts the plaintiff's testimony. Bothwell, his own witness, testifies the deed was not delivered until the 22d, and so does Husyugh and Ellwood, witnesses for the defendant. In a letter written to the postmaster at Chicago the plaintiff makes no claim that there was a delivery of the deed on the 21st, but states it to have been on the 22d.

The overwhelming weight of the testimony is that the trade was not completed until the 22d, and that plaintiff obtained no title whatever, either legal or equitable, until that day. The fact that the plaintiff testifies to the contrary detracts largely from the credibility or weight that otherwise should be given to his evidence, as a whole. The deed, without doubt, was delivered between ten minutes past 8 o'clock A. M. and 12 o'clock noon, of the

22d day of September, and the only inquiry is whether this was done before 10 o'clock A. M. of said day.

The transaction between the plaintiff and his brother and Ellwood, which culminated in the delivery of said deed, was the exchange on the part of Ellwood of certain property in Virginia and that in controversy, for certain property in Michigan. This trade had so far progressed on the 21st of September that the deed from Ellwood was handed to plaintiff, or his brother, for the purpose of being examined by his lawyer, who pronounced it insufficient; that is, it had not been properly acknowledged. The deed had been executed and acknowledged in Indiana, and it was then understood and agreed that Ellwood should go to Indiana, perfect the deed, and the plaintiff's brother, for some purpose, to Black Hawk county, Iowa.

So far we think there is no doubt. As to the object and purpose of John Howard's trip to Black Hawk county the parties are not in entire accord. Ellwood testifies that he went there to inquire as to the title and value of the property, and that if no telegram was received from him by 12 o'clock the next day the trade was to be consummated by a delivery of the deeds. To a certain extent Ellwood is corroborated in this respect by John Howard. He testifies he went and looked at the property, and during the afternoon of September 22, he "telegraphed plaintiff from Waterloo, Iowa, not to give up the deed, the property was not as recommended, or to that effect." Notwithstanding this trip to Waterloo and telegram, both the Howards testify the deed was delivered on the 21st. If it had been delivered then, why telegraph on the 22d not to do so. It is useless to claim the telegram had reference alone to deeds to be delivered by the Howards, because either all or none were to be delivered at the same time. If the deed was not to be delivered before 12 o'clock, unless a telegram was before that time received from John Howard, the defendants' theory as to such delivery is strengthened thereby. We are unable to avoid the conclusion that Ellwood's testimony in this respect is worthy of belief, and that of the Howards is not in so far as they attempt to convey the impression the delivery of the deed in no manner depended on the receipt of a telegram.

As we have said; both the Howards testify there was a delivery on the 21st, and the plaintiff also testifies there was another delivery after the acknowledgment had been perfected "at ten minutes past eight o'clock, A. M., on September 22, 1874, * * * because I remember looking at my watch." It is difficult to see why the plaintiff should have noted the time so carefully when there had in fact been a delivery according to his testimony on the previous day. The transaction is a singular one. At the time the plaintiff had no reason for suspecting there would be trouble as to his title, and when his deposition is taken a year or more afterward, he recollects not only that he looked at his watch, but that the time was just ten minutes past 8 o'clock, and yet he does not claim to have made any memorandum or state any reason why he made such an exact note of the time or why he remembered it so precisely. We are reluctantly compelled to say that we are utterly unable to believe this testimony, and we dismiss the Howards from any further consideration except where they are corroborated by other testimony. The delivery of the deed without doubt took place in Husyugh's office, and there were present at that time John Howard, Bothwell, R. D. Husyugh and Ellwood.

Bothwell testifies the deed was delivered "a little after half-past eight o'clock" in the forenoon. His reason for recollecting the time is that he "had an errand to do before bank opened which occupied fully three-quarters of an hour, and he did the errand and arrived at the bank before ten o'clock." He also states that he and John Howard met at the office about eight o'clock, and a few minutes after that Ellwood came in. Ellwood states that he got to the office at about nine o'clock, and he found it locked; was there only a few minutes; he did not see the Howards, and went away and returned about eleven o'clock, and shortly thereafter John Howard and Bothwell came in. Some time was spent in negotiations, and no telegram having been received from Daniel Howard at twelve o'clock the deed was delivered at that hour. Ellwood further testifies that the "transaction and all the circumstances connected with it were repeatedly brought to his mind immediately after the transaction, and at intervals after, continuing several months, in defending the property obtained from Howard from writs of attachments, liens, and everything conceivable that law could devise as against him by his creditors."

R. D. Husyugh testifies the office was not opened before nine o'clock, and that about eleven o'clock John Howard and Bothwell came in, and he then learned from them the deed had not been exchanged in consequence of no telegram having been received, and he states the deed was not delivered until after eleven o'clock, nor does he state when it was delivered.

Such is a brief outline of the testimony as to this transaction, and our conclusion is that the preponderance is decidedly with the defendant. Excluding Howard, there are two witnesses against one in favor of this theory. One of these is entirely disinterested, while Bothwell is connected with one of the Howards by marriage.

In attempting to fix a time at which any given transaction occurred there is great liability to mistake. Especially is this so if a considerable period of time has elapsed, as in this case, before the witness is called on to testify. While Bothwell states that he recollects the time from the fact that he got to the bank before ten o'clock, he fails to give any reason for recollecting that he, on that morning, got to the bank at the time stated. The matters stated by Ellwood were calculated to impress the time of the delivery on his mind. But the controlling fact is the non-receipt of the telegram, which we feel entirely clear was to be sent, and that no delivery was to take place before twelve o'clock, for the reason it had been agreed to wait until that hour for such telegram. This view renders the testimony of Rawlins and Wolf comparatively unimportant. The controlling consideration is that the deed was not to be delivered until twelve o'clock, and there was nothing occurred to cause any change in this respect, and two witnesses against one testify the delivery did not take place until after eleven o'clock, therefore it follows the letter enclosing the deed could not have been deposited in the post-office until after that time. The testimony of Rawlins and Wolf is so uncertain, and no circumstances are stated on which the mind can seize hold and rely in corroboration of their belief as to the time certain transactions occurred, that we are unable to allow such testimony to overcome our otherwise clear convictions.

AFFIRMED.